ACCEPTED
03-14-00704-CV
4254339
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/23/2015 9:34:23 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00704-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/25/2015 9:34:23 PM
JEFFREY D. KYLE
Clerk

IN THE
COURT OF APPEALS
OF THE THIRD SUPREME JUDICIAL CIRCUIT

## 2004 Dodge Ram 1500 TX LP#CPL1988 and 2000 Buick TX LP CV1N8187

v.

## The State of Texas

## APPELLANT'S BRIEF

Appeal from the 20th Judicial District Court
Milam County, Texas
Trial Court Cause No. CV36,279

**LAW OFFICE OF BENTON ROSS WATSON**
120 E. 1st Street
P.O. Box 1000
Cameron, Texas 76520
(254) 307-8181
(254) 231-0212—Facsimile
ross@texastopdefense.com
State Bar No. 24077591

## ORAL ARGUMENT REQUESTED

## NAMES OF THE PARTIES TO THE FINAL JUDGMENT

### STATE OF TEXAS

The Honorable W.W. "Bill" Torrey
Milam County District Attorney
204 N. Central.
Cameron, Texas 76520

### APPELLANT'S COUNSEL

Benton Ross Watson
120 E. 1st Street
P.O. Box 1000
Cameron, Texas 76520

### TRIAL COURT JUDGE

The Honorable John Youngblood
20th District Court Judge
102 S. Fannin Ave., 2nd Floor
Cameron, Texas 76520

## TABLE OF CONTENTS

NAMES OF THE PARTIES TO THE FINAL JUDGMENT ....I

TABLE OF CONTENTS.............................................................II

INDEX OF AUTHORITIES....................................................... V

REQUEST FOR ORAL ARGUMENT ................................... X

STATEMENT OF THE CASE.................................................. X

ISSUES PRESENTED..............................................................XI

STATEMENT OF FACTS ...................................................... 1

SUMMARY OF THE ARGUMENT ...................................... 6

ARGUMENT .......................................................................... 7

A. STANDARD OF REVIEW. ................................................ 7

B. SUMMARY JUDGMENT STANDARDS. ........................ 7

I. ISSUE ONE RESTATED: ...................................................10

   THE TRIAL COURT OVERLOOKED THAT
   FORFEITURE IS BARRED BY THE LIMITATIONS
   DEFENSE..................................................................................10

A. THE STATE DID NOT MEET THE 30-DAY
   LIMITATIONS PERIOD. .................................................. 10

1. THE STATE MUST SERVE OWNERS, INTEREST HOLDERS, AND
   POSSESSORS WITHIN 30 DAYS OF SEIZURE.............................. 11

2. THE STATUTE OF LIMITATIONS DEFENSE IS STRICTLY
   CONSTRUED. ......................................................................... 12

3. THE STATE FAILED TO SATISFY THE 30-DAY STATUTE OF
   LIMITATIONS.......................................................................... 15

B. THE STATE DID NOT USE DUE DILIGENCE AS A
   MATTER OF LAW........................................................... 17

1. THE STATE OFFERED NO EVIDENCE OF DILIGENCE, AND THE
   TRIAL COURT ERRONEOUSLY ASSUMED A VALID EXCUSE........ 18

2. CERTIFICATE OF TITLE AND OWNERSHIP ARE IRRELEVANT AS TO
   DILIGENCE. .......................................................................... 20

3. THE STATE USED NO CONTINUOUS DUE DILIGENCE TO SEEK
   TIMELY SERVICE. .................................................................. 22

II. ISSUE TWO RESTATED: ...................................................24

GRANTING FINAL SUMMARY JUDGMENT WAS
INAPPROPRIATE BECAUSE ISSUES, CLAIMS, AND
DEFENSES ARE UNRESOLVED. ...................................24

1. THE STATE'S MOTION FOR SUMMARY JUDGMENT ONLY
CHALLENGES MRS. ALCORN'S USE OF THE INNOCENT OWNER
DEFENSE UNDER 59.02(C). .......................................................25

2. MRS. ALCORN PUT EVERYTHING IN ISSUE. ............................26

a. *The State must conclusively prove that probable cause
existed to seize, and that the property is contraband subject
to forfeiture.* ..............................................................................26

b. *Mrs. Alcorn asserted the limitations defense.* ......................27

c. *Mrs. Alcorn claimed the defense under Article
59.02(h)(1)(C).* ........................................................................27

d. *Mrs. Alcorn claimed the defense of disproportional
forfeiture under the Eighth Amendment.* ...............................28

III. ISSUE THREE RESTATED: ...........................................31

THE TRIAL COURT'S DECISION TO GRANT
SUMMARY JUDGMENT IN FAVOR OF THE STATE
IS NOT SUPPORTED BY THE EVIDENCE .....................31

1. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT
FOR THE STATE BECAUSE THE EVIDENCE IS INSUFFICIENT AND
INCOMPETENT. ........................................................................31

a. *Motion to strike affidavit of Deputy White because it is
based on unverifiable hearsay, and on facts outside his
personal knowledge.* .................................................................33

b. *Motion to strike affidavit because it makes unsubstantiated
legal and factual conclusions.* .................................................34

c. *The State's affidavit does not conclusively establish
probable cause.* .........................................................................38

d. *The State's pleadings, even when sworn, cannot support its
own summary judgment.* ...........................................................41

e. *Deemed Admissions of others are inadmissible against Mrs.
Alcorn.* .......................................................................................41

2. THE STATE NEITHER RAISED NOR PROVED A CLAIM THAT EITHER
SET OF RIMS CONSTITUTES CONTRABAND. ...........................42

3. THE STATE'S NO-EVIDENCE MOTIONS ERRONEOUSLY EMPLOY
CONFLICTING EVIDENCE, AND GENUINE ISSUES OF MATERIAL
FACT DO EXIST. ........................................................................42

IV. REMAINING ISSUES RESTATED:................................ 47

SUMMARY JUDGMENT SHOULD NOT HAVE BEEN
GRANTED TO THE STATE. ........................................... 47

A. AUTHORITIES APPLYING INNOCENT OWNER
DEFENSE ARE WRONG. ................................................ 47

B. THE PROCEEDINGS WERE UNJUST AND UNFAIR
..................................................................................... 51

PRAYER .................................................................... 54

CERTIFICATE OF SERVICE ............................................... 55

CERTIFICATE OF COMPLIANCE ...................................... 56

APPENDICES ................................................................ 57

TRIAL COURT ORDERS....................................................... A

ORDER GRANTING SUMMMARY JUDGMENT ....... A-1

ORDER DENYING MOTION FOR NEW TRIAL ......... A-2

MAJOR STATUTORY PROVISIONS.................................... B

TEX. CODE CRIM. PROC. ARTICLE 59.02 ................. B-1

TEX. CODE CRIM. PROC. ARTICLE 59.04 ................. B-2

## INDEX OF AUTHORITIES

**Texas Supreme Court Cases**

$56,700 v. State,
  730 S.W.2d 659 (Tex. 1987)..................................................................... 26
Binur v. Jacobo,
  135 S.W.3d 646 (Tex. 2004)..................................................................... 43
Fairfield Ins. Co. v. Stephens Martin Paving, LP,
  246 S.W.3d 653 (Tex. 2008)..................................................................... 50
Ford Motor Co. v. Ridgway,
  135 S.W.3d 598 (Tex. 2004)..................................................................... 43
G & H Towing Co. v. Magee,
  347 S.W.3d 293 (Tex. 2011) (per curiam)............................................... 24
Hidalgo v. Sur. Sav. & Loan Ass'n,
  462 S.W.2d 540 (Tex. 1971)............................................................... 32, 41
Lehmann v. Har-Con Corp.,
  39 S.W.3d 191 (Tex. 2001)....................................................................... 24
Randall v. Dallas Power & Light Co.,
  752 S.W.2d 4 (Tex. 1988)......................................................................... 31
Sharp v. Stacy,
  535 S.W.2d 345 (Tex. 1976)..................................................................... 50
State v. $ 281,420.00,
  312 S.W.3d 547 (Tex. 2010)..................................................................... 16
State v. $90,235.00,
  390 S.W.3d 289 (Tex. 2013)..................................................................... 26
State v. Silver Chevrolet Pickup,
  140 S.W.3d 691 (Tex. 2004)............................................................... 13, 16
Uvalde Country Club v. Martin Linen Supply Co.,
  690 S.W.2d 884 (Tex. 1985)..................................................................... 20


**Texas Court of Criminal Appeals Cases**

Caldarera v. State,
  504 S.W.2d 914 (Tex. Crim. App. 1974)................................................. 33
Crider v. State,
  352 S.W.3d 704 (Tex. Crim. App. 2011).................................................. 40
State v. Duarte,
  389 S.W.3d 349 (Tex. Crim. App. 2012).............................................. 38, 39

Stoddard v. State,
  475 S.W.2d 744 (Tex. Crim. App. 1972)............................................. 37, 39


**Texas Appellate Court Cases**

$18,800 v. State,
  961 S.W.2d 257 (Tex. App.—Houston 1997, no writ)............................ 44
$3,639 v. State,
  133 S.W.3d 698 (Tex. App.—Corpus Christi 2003, no pet.) .................. 20
$567.00 v. State,
  282 S.W.3d 244 (Tex. App.—Beaumont 2009, no pet.). ........................ 35
$6,453.00 v. State,
  63 S.W.3d 533 (Tex. App.—Waco 2001, no pet.)................................... 10
1988 Dodge Pickup v. State,
  No. 06-06-00011-CV, 2006 Tex. App. LEXIS 10551 (Tex. App.—
  Texarkana Dec. 12, 2006, no pet.) (mem. op.) ........................................ 10
2003 Ford Pickup v. State,
  No. 04-06-00036-CV, 2007 Tex. App. LEXIS 865 (Tex. App.—San
  Antonio Feb. 7, 2007, no pet.) (mem. op.).............................................. 27
Amrani-Khaldi v. State,
  575 S.W.2d 667 (Tex. Civ. App.—Corpus Christi 1978, no writt) ........... 26
Anderson v. Royce,
  624 S.W.2d 621 (Tex. App.—Houston 1981, writ ref'd n.r.e.)................ 48
Audish v. Clajon Gas Co.,
  731 S.W.2d 665 (Tex. App.—Houston 1987, writ ref'd n.r.e.). .............. 33
Beal Bank v. Gilbert,
  417 S.W.3d 704 (Tex. App.—Dallas 2013, no pet.)................................ 44
Belleza-Gonzalez v. Villa,
  57 S.W.3d 8 (Tex. App.--Houston 2001, no pet.).................................... 20
Bochas v. State
  951 S.W.2d 64 (Tex. App.—Corpus Christi 1997, no writt).................... 48
Bryant v. Kimmons,
  430 S.W.2d 73 (Tex. Civ. App.—Austin [3rd Dist.] 1968, no writ). ....... 25
Dillard v. NCNB Tex. Nat'l Bank,
  815 S.W.2d 365 (Tex. App.—Austin [3rd Dist.] 1991, no writ).............. 31
Feldman v. Mfrs. Hanover Mortg. Corp.,
  704 S.W.2d 422 (Tex. App.—Houston 1985, writ ref'd n.r.e.)................ 41
Fisher v. State,
  803 S.W.2d 828 (Tex. App.—Dallas 1991, writ ref'd) ........................... 22

Furr v. Furr,
  721 S.W.2d 565 (Tex. App.—Amarillo 1986, no writ)............................ 21
Gaston v. State,
  641 S.W.2d 261 (Tex. App.—Houston 1982, no writ)............................ 26
Gonzales v. State,
  761 S.W.2d 809 (Tex. App.—Austin [3rd Dist.] 1988, writ ref'd).......... 40
Gray v. State,
  No. 03-99-00235-CV, 1999 Tex. App. LEXIS 8213 (Tex. App.—Austin
  [3rd Dist.] Nov. 4, 1999, no pet.) (mem. op., not designated for
  publication) ...................................................................................... 26
Harrell v. Hochderffer,
  345 S.W.3d 652 (Tex. App.—Austin [3rd Dist.] 2011, no pet.).............. 44
Klein & Assocs. Political Rels. v. Port Arthur Indep. Sch. Dist.,
  92 S.W.3d 889 (Tex. App.—Beaumont 2002, pet. denied)...................... 46
Knox v. Donovan Lowery Ins. Agency,
  405 S.W.2d 160 (Tex. Civ. App.—Eastland 1966, no writ).................... 18
Manson v. State,
  609 S.W.2d 855 (Tex. Civ. App.--Texarkana 1980, no writ)................... 14
Martinez v. State,
  893 S.W.2d 304 (Tex. App.—Corpus Christi 1995, no writit).................. 13
McKissick v. State,
  209 S.W.3d 205 (Tex. App.—Houston 2006, pet. ref'd) ........................ 40
Mitchell v. State,
  819 S.W.2d 659 (Tex. App.—El Paso 1991, no writ) ............................ 26
One 1991 Chevrolet Blazer v. State,
  905 S.W.2d 443 (Tex. App.—Amarillo 1995, no writ). ........................ 18
One Car, 1996 Dodge X-Cab Truck v. State,
  122 S.W.3d 422 (Tex. App.—Beaumont 2003, no pet.) ........................ 28
One Ford Mustang v. State,
  231 S.W.3d 445 (Tex. App.—Waco 2007, no pet.)................................ 52
Roberts v. Padre Island Brewing Co.,
  28 S.W.3d 618 (Tex. App.—Corpus Christi 2000, pet. denied)............... 22
State v. Lot 10, Pine Haven Estates,
  900 S.W.2d 400 (Tex. App.--Texarkana 1995, no writ)........................ 12
State v. Park,
  820 S.W.2d 948 (Tex. App.—Texarkana 1991, no writ) ........................ 13
Windle v. Mary Kay, Inc.,
  No. 05-02-00252-CV, 2003 Tex. App. LEXIS 5594 (Tex. App.—Dallas
  July 1, 2003, pet. denied) (mem. op.) ................................................ 22

## United States Supreme Court Cases

Sgro v. United States,
  287 U.S. 206 (1932)............................................................... 40
Spinelli v. United States,
  393 U.S. 410 (1969)............................................................... 39
United States v. Bajakajian,
  524 U.S. 321 (1998)........................................................... 28, 29

## United States Constitution

U.S. CONST. amend. IV ....................................................... 39, 40
U.S. CONST. amend. VIII.................................................... III, 28
U.S. CONST. amend. VIII........................................................ 28

## Texas Court of Criminal Appeals Cases

TEX. CONST. art. I, § 21 ..................................................... 49, 51
TEX. CONST. art. I, § 9 ........................................................... 26
TEX. CONST. art. XVI, § 15....................................................... 51

## Texas Code of Criminal Procedure

TEX. CODE CRIM. PROC. ANN. art. 59.01(2).................................... 7
TEX. CODE CRIM. PROC. ANN. art. 59.01(6).................................... 8
TEX. CODE CRIM. PROC. ANN. art. 59.02(a).................................... 7
TEX. CODE CRIM. PROC. ANN. art. 59.02(c)........................... passim
TEX. CODE CRIM. PROC. ANN. art. 59.02(d)................................... 16
TEX. CODE CRIM. PROC. ANN. art. 59.02(h)(1)(C)............... 3, 26, 27
TEX. CODE CRIM. PROC. ANN. art. 59.04(a)................................... 10
TEX. CODE CRIM. PROC. ANN. art. 59.04(b)..................... 11, 14, 15
TEX. CODE CRIM. PROC. ANN. art. 59.04(c)..................... 11, 15, 20
TEX. CODE CRIM. PROC. ANN. art. 59.04(j)...................... 11, 15, 16
TEX. CODE CRIM. PROC. ANN. art. 59.04(k)........................... 22, 23

## Other Texas Statutes

TEX. FAM. CODE ANN. § 3.102 ................................................ 15
TEX. FAM. CODE ANN. § 3.201 ................................................ 48
TEX. FAM. CODE ANN. § 3.202 ........................................ 47, 48, 49
TEX. FAM. CODE ANN. § 3.003 ................................................ 44
TEX. FAM. CODE ANN. § 3.406 ................................................ 51

TEX. FAM. CODE ANN. § 7.001 ..................................................... 51
TEX. PENAL CODE ANN. § 39.03 ................................................. 53

## Texas Rules of Civil Procedure

TEX. R. CIV. P. 114 ................................................................. 22
TEX. R. CIV. P. 115 ................................................................. 22
TEX. R. CIV. P. 116 ........................................................ 2, 19, 22
TEX. R. CIV. P. 166a(c) ................................................... passim
TEX. R. CIV. P. 166a(f) ......................................... 31, 34, 37, 38
TEX. R. CIV. P. 166a(i) ............................................................ 8
TEX. R. CIV. P. 198.3 ............................................................ 25

## Other Authorities

United States v. Wagner,
  989 F.2d 69, 75 (2d Cir. 1993) ............................................. 40

Don Clemer and Ann B. White, Texas District & County Attorneys
  Association, Guide to Asset Seizure and Forfeiture, at 31 (2010) 11, 15, 53

Patrick Henry, *An Appeal to Arms*, Address at the Virginia Convention
  (March 23, 1775) *in* Charles Morris, *Famous Orators of the World and
  Their Famous Orations* 21 (John C. Winston ed., 1902) ......................... 54

## REQUEST FOR ORAL ARGUMENT

TO THE HONORABLE COURT:

Appellant requests that oral argument be granted. Argument would benefit the Court because issues of first impression are involved, statutory and constitutional provisions that lack judicial interpretation are implicated, and the underlying circumstances are easier understood verbally.

## STATEMENT OF THE CASE

This case primarily challenges a trial court's grant of summary judgment in favor of the State within a forfeiture suit under Chapter 59, Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. arts. 59.01-59.04. (See Appendices A-1 and A-2 for order granting summary judgment, and order denying motion for new trial.)

I. The trial court erred by granting summary judgment for Plaintiff because Defendant's evidence conclusively proved, or raised a fact issue on, every element of the statute of limitations defense.

II. The trial court erred by granting full and final summary judgment because all issues, claims, and defenses were not decided.

III. The trial court erred by granting summary judgment for Plaintiff because evidence supporting Plaintiff's summary judgment was incompetent and insufficient.

IV. Summary judgment was premature because the case was still developing, the state did not comply with discovery, evidence discovered after the trial court's order of summary judgment shows this, and Defendant was not provided a fair opportunity to investigate and develop the case—due to the fault of Plaintiff.

V. Summary judgment could not have been granted based on authorities analyzing a spouse's right to utilize an innocent owner defense because those authorities are wrong, and should be overruled.

VI. Summary judgment should not have been granted for Plaintiff for any other reason.

## STATEMENT OF FACTS

**Seizure.** On the morning of March 6, 2014, LaToya Alcorn sits in a modest wood framed house at 624 N. Wilcox in Rockdale, Texas, that she, her two children, and her husband, Sedderick Alcorn, call home. (I C.R. 216, 225-27, 306) Before ending a visit with her mother, Norma Williams, and heading off to work, a gang of law enforcement and wrecker service crews invade the area of Mrs. Alcorn's home in order to take her vehicles—a 2004 Dodge truck and 2000 Buick sedan. (I C.R. 225-26, 229-31, 310-12)

Before the vehicles are taken, Mrs. Alcorn removes her personal items, along with her kids' medical papers, and signs an inventory form. (I C.R. 225, 230-31, 310-12) Mrs. Alcorn drives both vehicles, and law enforcement has seen her with the truck at a carwash (*Id.* at 226) Law enforcement knows the vehicles are kept at 624 N. Wilcox. (*Id.* at 11, 217) It also knows Mrs. Alcorn's husband is in jail, where he has been for almost a month. (*Id.* at 308) Except a one page warrant, Mrs. Alcorn receives nothing to inform her of reasons for seizure or any rights she may have. (*Id.* at 228)

**Suit.** Twelve days later, the Milam County District Attorney's Office files a notice of seizure and intended forfeiture (i.e., petition). (*Id.* at 5) The State alleges the vehicles are contraband based on two events over 7 and 14 months old, as told by unnamed persons, and purportedly documented in the

past on other officers' unattached, unproduced videos. (*Id.* at 5-12, 216-217) Deputy White's affidavit attached to the petition is mostly a carbon copy of his affidavit used to procure the seizure warrant the day before seizure. (*Id.* at 10-11, 216-221)

Both affidavits admit that Mrs. Alcorn's husband is "the owner of the vehicles." (I C.R. 10, 217) They also admit that, although names on the vehicles' certificates of title have not been changed to reflect current ownership, those listed—James Rackley and Gil Shamsher—have not "had any claim to the vehicles in the previous year to present." (*Id.*)

**Service.** The State personally serves Sedderick Alcorn notice of suit with citation in jail. (I C.R. 22) It personally serves James Rackley and Gill Shamsher by citation also. (*Id.* at 20, 24) Yet, James Rackley informs the State he has no interest in the Dodge truck. (*Id.* at 223) In 2013, Sedderick purchased, and took possession of, the truck, and he (Rackley) delivered its title and transfer papers to Mrs. Alcorn in a Baptist church parking lot. (*Id.*)

Mrs. Alcorn is not served by any method, and answers on May 28, 2014—roughly 83 days from seizure (on March 6). (I C.R. 26)

**The State Moves for Judgment.** In early July, James Rackley stipulates to a default judgment. (*Id.* at 28) Then, the State moves for summary judgment against Mrs. Alcorn and her husband, Sedderick, and

takes a default judgment against Gill Shamsher. (*Id.* at 35, 116-17) The State obtains summary judgment against Sedderick based on deemed admissions. (*Id.* at 36-38, 351)

The State urges traditional and no-evidence motions against Mrs. Alcorn. (I C.R. 38-43) The State claims Mrs. Alcorn lacks standing to raise the innocent owner defense under Texas Code of Criminal Procedure Article 59.02(c) because she is a spouse. (*Id.* at 38, 39) The State also claims that, even if she has standing, no evidence supports her ownership interest under 59.02(c) because those listed on certificate of title are presumed owners. (*Id.* at 39, 40-42) And, it claims no evidence supports that Mrs. Alcorn had a reasonable lack of knowledge required by 59.02(c). (*Id.* at 39, 42-43)

**Mrs. Alcorn Responds.** Mrs. Alcorn quickly files a verified amended answer, denying all allegations, denying that all conditions precedent have been met, and asserting affirmative defenses: statute of limitations, disproportional forfeiture, and the innocent owner defense of 59.02(h)(1)(C), in addition to 59.02(c). (I C.R. 127) She also responds and objects to the State's motions, evidence, pleadings, discovery, and timing, and demonstrates she is actually entitled to summary judgment.  (*Id.* at 130-329)

**The State Amends.** Afterward, 152 days following seizure, the State amends its pleadings, adds Mrs. Alcorn as a potential owner or interest

holder of the vehicles, provides her address for service of process as 624 N. Wilcox, and faxes a copy to her attorney. (I C.R. 331-32, 336)

**The Trial Court Grants Summary Judgment.** After the hearing, the trial court sends a letter recognizing Mrs. Alcorn's standing, but indicates it will grant the State's motion. (I C.R. 347) Mrs. Alcorn again requests rulings on responses and objections, and clarification of the court's proposed decision. (*Id.* at 349) Without responding to Mrs. Alcorn's requests, the trial court grants final summary judgment. (*Id.* at 351)  (Appendix A-1)

**Mrs. Alcorn Moves for New Trial.** Mrs. Alcorn then moves for new trial, renews prior objections and requests, objects to the court's actions and grant of final summary judgment, and presents additional evidence she would have presented had there been sufficient time for discovery. (I C.R. Supp. 4-137)

Mrs. Alcorn's additional evidence proves the State's valuation of the Buick leaves $7,000 unaccounted for. (I C.R. Supp. 88, 90-91, 356-57) Plus, evidence again confirms that the valuation also omits the value of rims on the Buick and $2,000 Mrs. Alcorn put into it. (I C.R. 226) (I C.R. Supp. 88)

Mrs. Alcorn again shows the Buick's rims, possibly worth several thousand dollars, disappeared from a highly secure impound area at the

sheriff's office just after deputies seized the Buick. (I C.R. 226, 230-31) (I C.R. Supp. 106-09) The State continues to remain silent.

But, she also shows the truck rims were bought on February 4, 2014— *six months after* the acts alleged by the State. (I C.R. 360)

Finally, Mrs. Alcorn again informs the trial court about the hardships facing both her and her attorney. (I C.R. Supp. 126-33) (I C.R. 173-80) She again informs the trial court about the State's untimely service, the State's hasty bombardment of discovery, and the State's unreasonable immediacy in moving for no-evidence summary judgment before there was adequate time to investigate. (I C.R. Supp. 126-33) And, she again informs the trial court of the State's failure to disclose evidence—such as the information by James Rackley, statements of other witnesses and parties, its method of estimating value and the worth of other items, and information about the disappearance of the Buick's rims. (I C.R. 238-43)

Even so, Mrs. Alcorn's pleas fall on deaf hears. The trial court denies her motion for new trial, and refuses to rule on her objections for the third time. (I C.R. Supp. 138) (Appendix A-2)

Mrs. Alcorn now appeals to this Court for relief.

## SUMMARY OF THE ARGUMENT

There are three primary reasons the trial court should be overturned.

First, the State failed to serve Mrs. Alcorn within the limitations period, and no evidence supports an excuse for its failure to do so.

Second, all issues, claims, and defenses were not decided; thus, the trial court erred by granting full and final summary judgment. The State's motion was wholly based on Mrs. Alcorn's inability to successfully assert the innocent owner defense of Article 59.02(c), Texas Code of Criminal Procedure. The State never sought to prove any other issue against Mrs. Alcorn, and never mentioned her other defenses.

Third, the State's summary judgment evidence is incompetent and insufficient because it is hearsay; based on conclusory opinions, second hand knowledge, and unattached exhibits; and is merely part of the pleadings. Neither pleadings nor proof justifies the amount of property seized. And, the trial court had no discretion to ignore evidentiary objections.

The trial court's decision is wrong for other reasons: Fact issues were raised as to other defenses. The case needed further development. The proceedings were unfair. Authorities interpreting the innocent owner defense are erroneous. And, summary judgment should not have been granted.

## ARGUMENT

The trial court erred by granting summary judgment to the State. This Court should reverse and render judgment against the State on the statute of limitations issue. Alternatively, this Court should remand on all grounds.

### A. STANDARD OF REVIEW.

A grant of summary judgment is reviewed de novo. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013).

Laws are strictly construed against the forfeiture, especially when forfeiture is to the sovereign and created by statute. [1]

### B. SUMMARY JUDGMENT STANDARDS.

To obtain traditional summary judgment, a movant must prove with competent evidence that no genuine issue of material fact exists, and it is entitled to judgment as a matter law on issues expressly set out in the motion or in an answer or any other response to the motion. TEX. R. CIV. P. 166a(c).

Evidence favorable to the non-movant is taken as true, and every reasonable inference is indulged, and any doubts resolved, in its favor.

---

[1] State v. Lot 10, Pine Haven Estates, 900 S.W.2d 400, 402 (Tex. App.—Texarkana 1995, no pet.), superseded by statute, as stated in State v. Silver Chevrolet Pickup, 140 S.W.3d 691, 693 (Tex. 2004); *id.* at 694 (noting strict construction of limitations statute).

*Martin v. Durden*, 965 S.W.2d 562, 564 (Tex. App.—Houston 1997, no pet.).

Summary judgment may be defeated by raising a genuine issue of material fact on each element of an affirmative defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

For its no-evidence motion, the movant must specifically state the elements as to which there is no evidence. TEX. R. CIV. P. 166a(i). The non-movant must then produce more than a scintilla of evidence to raise a genuine issue of material fact on those elements. *Id. Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin [3rd Dist.] 1998, no pet.). The evidence must create more than a mere surmise or suspicion. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

The evidence is viewed in a light most favorable to the non-movant and all contrary evidence and inferences are disregarded. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Where the court's judgment does not specify the ground relied upon for its ruling, summary judgment must be affirmed if any theory advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

As to standing, the pleadings are taken as true and construed in the pleader's favor. *Pagosa Oil & Gas v. Marrs & Smith*, 323 S.W.3d 203, 210

(Tex. App.—El Paso 2010, pet. denied) (discussing *Tex. Dept. of Parks &*

*Wildlife v. Miranda*, 133 S.W.3d 217, 226—28 (Tex. 2004)).

# I. ISSUE ONE RESTATED:

The trial court overlooked that forfeiture is barred by the limitations defense.

The trial court erred by granting summary judgment for the State because Mrs. Alcorn conclusively proved—or at least raised genuine issues of material fact—that the affirmative defense of limitations bars forfeiture. *Brownlee*, 665 S.W.2d at 112 (stating rule that summary judgment may be defeated by raising fact issue on every element of an affirmative defense).

## A. THE STATE DID NOT MEET THE 30-DAY LIMITATIONS PERIOD.

"[T]he state shall commence proceedings under this section not later than the 30th day after the date of the seizure." TEX. CODE CRIM. PROC. art. 59.04(a). "The service of process must be within the limitations period." *$6,453.00 v. State*, 63 S.W.3d 533, 536 (Tex. App.—Waco 2001, no pet.). Service of process is not waived by generally appearing in suit. *$24,156.00 v. State*, 247 S.W.3d 739, 747 (Tex. App.—Texarkana 2008, no pet.).

**1.** **The State must serve owners, interest holders, and possessors within 30 days of seizure.**

Owners, interest holders, and those "in possession of the property at the time of seizure must be served by citation as per Article 59.04(b), (c), and (j)." [2] Owners and interest holders of seized property must be served by citation with notice of seizure and intended forfeiture (i.e., the petition) just like in other civil cases. TEX. CODE CRIM. PROC. ANN. art. 59.04(b).

"If the ***person in possession of the vehicle at the time of the seizure*** is not the owner or the interest holder of the vehicle, notification ***shall*** be provided to the possessor in the same manner specified for notification to an owner or interest holder." *Id.* § (c) (emphasis added). Moreover, one "in possession of the property at the time it was seized ***shall*** be made a party to the proceeding." *Id.* § (j) (emphasis added). Thus, "when the ***possessor of the vehicle*** is not the recorded registered owner… the possessor must be separately served with citation." [3]

---

[2] Don Clemer and Ann B. White, Texas District & County Attorneys Association, Guide to Asset Seizure and Forfeiture, at 31 (2010)(hereafter "TDCAA Guide").

[3] *Id.* at 33.

## 2. The statute of limitations defense is strictly construed.

The 30-day period is strictly construed and binding against the State.[4]

In *State v. Lot 10, Pine Haven Estates*, the statute of limitations blocks the State's attempt to forfeit a cabin owned by Mr. and Mrs. Stark, and used by Mr. Stark to commit indecency with a child. 900 S.W.2d 400, 401 (Tex. App.—Texarkana 1995, no writ).[5] The cabin sits on Lot **# 8**, which the State's agents physically seize and mark off with yellow tape. *Id.* at 401. Yet, the State's petition accidently names Lot **# 10** (instead of Lot **# 8**). *Id.*

After 30 days, the Starks amend their answer to assert the limitations defense. The State quickly amends to name Lot # 8. The Starks seek summary judgment on limitations. The trial court grants the Starks' motion because the amendment is more than 30 days from seizure. *Id.* at 402.

The State misleads no one, harms no third party rights, seizes the correct property, and "promptly" corrects the misdesignation. *Id.* at 403 (Cornelius, C.J., concurring). And, all parties know full well which property is being forfeited.

Even so, the Starks win because "[t]here is no question… the State failed to meet the explicit requirements of the statute." *Id.* at 402.

---

[4] *$24,156.00*, 247 S.W.3d at 743, 747 n.5; 1988 Dodge Pickup v. State, No. 06-06-00011-CV, 2006 Tex. App. LEXIS 10551, at *5-6 (Tex. App.—Texarkana Dec. 12, 2006, no pet.) (mem. op.) (59.04(a) "shall be strictly construed").

[5] superseded in part by statute, as stated in *Silver Chevrolet*, 140 S.W.3d at 693-94 (noting general change in legislative intent, but not in strict construction of limitations).

*Pine Haven* differs from instances where the State files its petition within the 30-day time frame, but fails to attach the officer's affidavit. *Id.* (discussing *State v. Park*, 820 S.W.2d 948 (Tex. App.—Texarkana 1991, no writ). In such instance, if the officer's affidavit exists, the petition may be cured by amendment (adding the affidavit) because it is filed in the right county, against the right property, on the right people, and within the requisite time frame. Thus, the defect relates only to the pleadings.

*Pine Haven* also differs from situations where the State fails to timely file a lis pendens notice, as seen in *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 694 (Tex. 2004). In *Silver Chevrolet*, the Court says that failure to maintain strict compliance with a lis pendens provision is not necessarily fatal. *Id.* at 694. Basically, a lis pendens notice protects outside third parties who may later seek to purchase or take a security interest in the property; yet, a statute of limitation protects those with existing property rights being directly affected. *Id.* Thus, a lis pendens provision is only an internal timing directive—"[u]nlike the thirty-day requirement in Pine Haven Estates, which constituted a statute of limitations…" *Id.*

In *Martinez v. State*, a trial court erroneously grants forfeiture of a defendant's vehicle. 893 S.W.2d 304, 305 (Tex. App.—Corpus Christi 1995, no writ). Although the seizure occurs in Kennedy County, the State files the

forfeiture suit in Kleberg County, where it prosecutes the driver and stores the vehicle. Later, the defendant files a plea to the jurisdiction due to the State's failure to file in the county of seizure as required by Article 59.04(b). *Id*. The trial court denies the plea, and forfeits the vehicle after trial.

The appeals court reverses because the mandatory "language of Art. 59.04 is very precise." *Id.* at 305. The court must reverse ***and render*** for the defendant because the State cannot transfer venue back to Kennedy County after its failure to follow mandatory rules causes the 30-day period to run.

Finally, in *Manson v. State*, Vickie Lynn Manson is in possession of a Cadillac owned by Gary Long that is forfeited to the State after Vickie gets caught driving it while carrying illegal drugs. 609 S.W.2d 855, 856 (Tex. Civ. App.—Texarkana 1980, no writ) Vickie is personally served because she had possession of the Cadillac at the time of seizure. *Id.* at 857. The State cannot find Gary, and serves him through publication. *Id.* at 856. At trial, Vickie objects to the way Gary's interests are being handled. *Id.* at 856-57. The trial court overrules her objections, and the appeals court affirms. *Id.*

Basically, Vickie lacks standing to complain about errors concerning Gary because she never claims to have "any interest in the vehicle, or . . . any right to the continued possession of it." *Id.* at 856.  And, Vickie suffers no personal harm since she was properly served. *Id.* at 857.

### 3. The State failed to satisfy the 30-day statute of limitations.

Mrs. Alcorn's possession of the vehicles at the time of seizure, and her status as Sedderick's wife are undisputed. As an owner, interest holder and possessor of the vehicles at the time of seizure, the State had to serve her by citation. TEX. CODE CRIM. PROC. ANN. art. 59.04(b), (c), (j).[6]

Unlike *Manson*, Mrs. Alcorn was personally injured because she was never personally served—and was not served by any method for 152 days. (I C.R. 331-36) Unlike *Manson*, Mrs. Alcorn at the least had the continued right of possession and use of both vehicles because she was a spouse.[7]

But that's not all. Mrs. Alcorn and officers signed inventory forms at the time of seizure (which were in the State's possession). (I C.R. 310-12) The forms show she removed personal items, and her kids' medical papers, from the vehicles. (*Id.* at 225, 230-31) Sedderick was in jail at the time of seizure—and had been for almost a month. (*Id.* at 308) The truck's title and transfer papers were delivered to Mrs. Alcorn—which the State knew of. (*Id.* at 223) Mrs. Alcorn invested money in the Buick, drove both vehicles, and an officer saw her in possession of the truck at a carwash. (*Id.* at 226)

---

[6] See TDCAA Guide, at 33 (stating "possessor must be separately served with citation.")

[7] TEX. FAM. CODE ANN. §3.102 (stating community property subject to joint control). See State v. Bassano, 827 S.W.2d 557, 60 (Tex. App.—Corpus Christi 1992, no pet.) (finding defendant-husband to have "a possessory right of use and control of his wife's [car].").

Thus, as in *Silver Chevrolet*, Mrs. Alcorn is a "person whose property is the subject of the forfeiture proceeding." 140 S.W.3d at 694. Even as a possessor, her existing property rights are directly affected,[8] thus, she is a mandatory party. TEX. CODE CRIM. PROC. ANN. art. 59.04(j). *See id.* art. 59.02(d) (stating possessor retains "rights… during pendency of proceedings under this chapter as if possession of the property had remained with [her].")

And, similar to the Starks in *Pine Haven*, Mrs. Alcorn could amend her answer to assert the limitations defense because appearing in suit does not waive service for purposes of that defense. *$24,156.00*, 247 S.W.3d at 747. In fact, Mrs. Alcorn's case is even stronger than *Pine Haven* because she was never properly served, she was not initially involved in suit, she did not attempt to game the State, her statutory rights and ownership interests were harmed, the mistake was more than a typo, the State's amendment still did not cure *service*, and its amendment came much later—152 days after seizure. (I C.R. 331-36)

Therefore, just like the *Martinez* court, this court should render judgment for Mrs. Alcorn because she was (and still is) injured, the State did not follow multiple provisions mandating service of process, and over 300 days have passed without proper service.

---

[8] See State v. $ 281,420.00, 312 S.W.3d 547, 551 (Tex. 2010) (discussing bailments).

## B. The State Did Not Use Due Diligence As A Matter of Law.

When service occurs outside the limitations period, the State must produce evidence that it used "due diligence in attempting to procure service in a timely manner." *$6,453.00,* 63 S.W.3d at 536.

Before granting summary judgment, the trial court sent a letter indicating reasons for its planned decision, which explained:

> First regarding Mr. Watson's argument that despite how the vehicles were titled, his client nevertheless has standing, I believe that argument to be well taken, as caselaw supports that position. As such, Ms. Alcorn was entitled to the requisite rights provided any holder of interest under Chapter 59.
>
> That leads in turn to the issues involving notice and the statute of limitations. I think the State proceeded in good faith with regard to noticing individuals with a known interest in the automobiles. Ms. Alcorn's name not being on any record title would appear to be at the root of the problem, and apparently the matter has been satisfactorily addressed. She has made an appearance, and I have found her to have standing.

(I C.R. 347-48) The trial court could not find that the State used diligence to procure issuance and service for at least three reasons. First, the State offered no evidence of diligence. Second, the State should have served Mrs. Alcorn as a possessor regardless of ownership. Third, the State did not continuously seek issuance or service.

**1.** **The State offered no evidence of diligence, and the trial court erroneously assumed a valid excuse.**

Diligence is lacking as a matter of law when "no excuse is offered…" *One 1991 Chevrolet Blazer v. State*, 905 S.W.2d 443, 445 (Tex. App.—Amarillo 1995, no writ). *See Knox v. Donovan Lowery Ins. Agency*, 405 S.W.2d 160-61 (Tex. Civ. App.—Eastland 1966, no writ) (eight-day-delay lacked diligence where no explanation offered).

The State never said, by affidavit or otherwise, that the absence of Mrs. Alcorn's name from certificate of title was the *root of the problem.* It never responded at all. This was not the excuse offered by the State, but the excuse assumed by the trial to relieve the State of its duty to offer an excuse.

In any event, this assumed excuse is erroneous because it is inconsistent with the evidence. The State twice admitted on oath that those listed on the certificates of title (James Rackley and Gil Shamsher) had no "claim to the vehicles in the previous year to present." (I C.R. 2117, 220) It admitted this before seizure, and again before suit was filed. (*Id.* at 218, 221)

Thus, the State was not misled to believe those listed on certificates of title were owners when it swore twice that those listed had no interest.

The State also admitted twice on oath that the vehicles were owned by Sedderick, in his exclusive possession, and stored at the Alcorn residence,

624 N. Wilcox. (*Id.* at 217-18, 220-21) James Rackley, a neutral party, stated he had no interest in the truck, that he transferred it to the Alcorns, and he relayed this to the District Attorney. (*Id.* at 223) He stipulated to a default judgment—before the State ever moved for summary judgment. (*Id.* at 28) And, default judgment was taken against Gill Shamsher—before Mrs. Alcorn amended her answer and filed a response. (*Id.* at 116-17)

Again, the State cannot reasonably contend that people have no ownership interest, and then say those people are presumed owners.

The State was also put on notice that Mrs. Alcorn was an owner. She was head of the household at 624 N. Wilcox (where the vehicles were stored), she was in charge at the time of seizure, Sedderick was in jail, and she removed personal items from the vehicles. (I C.R. 225, 308, 310-12, 314-15) Agents of the State have seen her in possession of the car, she called in-laws over to witness the seizure, she signed the inventory form—using the name *Alcorn*—, and easily available public records all show the State had reason to know Mrs. Alcorn was Sedderick's wife. (*Id.* at 225-26, 311, 298, 300) (I C.R. Supp. 123) The State has never said otherwise. And, the State later acknowledged Mrs. Alcorn's interest in its amended petition.

Finally, ownership is irrelevant because Mrs. Alcorn was a possessor.

**2.** **Certificate of Title and Ownership are Irrelevant as to Diligence.**

Mrs. Alcorn's possession of the vehicles at the time they were seized is undisputed. Therefore, Mrs. Alcorn had to be served anyway—even if the State thought she had absolutely no interest—because she was "the *person in possession of the vehicle at the time of the seizure*…" TEX. CODE CRIM. PROC. ANN. art. 59.04(c) (emphasis added).

Failure to follow the law is not diligent as a matter of law. *$3,639 v. State*, 133 S.W.3d 698, 701-02 (Tex. App.—Corpus Christi 2003, no pet.) (citing *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (stating "failure to affirmatively show strict compliance with the Rules of Civil Procedure renders the attempted service of process invalid and of no effect.")).

In *Belleza-Gonzalez v. Villa*, Attorney Gonzalez is not diligent as a matter of law for relying on an oral agreement with a defendant to delay service until medical documents lost in a burglary are found. 57 S.W.3d 8 (Tex. App.—Houston 2001, no pet.). Despite unfortunate circumstances, and the defendant's bait-and-switch tactics, Gonzalez is found to lack diligence because he should have followed the requirements of Rule 11. *Id.* at 12.

In Mrs. Alcorn's case, the trial court incorrectly found *good faith* because that is not the standard. Attorney Gonzalez's oral agreement may

have been in good faith, but was still insufficient to show diligence. Neither the unfortunate circumstances, nor the defendant's shrewd litigation tactics, relieved Attorney Gonzalez from following the rules.

The bottom line is that, when one chooses to play a game, it must play by the rules. The State *chose* to file suit, and must be held accountable to the rules governing that suit. The law says Mrs. Alcorn had to be served because she was a possessor. Because the law says to serve possessors, beliefs about ownership and title do not matter. Because the law is easily available and clear, the State had no excuse for not following it. *See Furr v. Furr*, 721 S.W.2d 565, 566 (Tex. App.—Amarillo 1986, no writ) (finding "obvious failure to read applicable, easily available rules" negates diligence).

**3.** **The State used no continuous due diligence to seek timely service.**

The State must do more than offer reasons for failing to procure timely service. It must show that it both requested issuance of citation,[9] and continuously used "diligence to '***seek***' service of process"[10] all the way "up until the defendant was served."[11] Diligence also requires the State "to exhaust all the available alternatives to achieve proper service."[12]

Also, when property owners are unknown, and no one is in possession at the time of seizure, "the attorney representing the state ***shall*** file . . . an affidavit stating that no person was in possession of the property at the time it was seized and that the owner of the property is unknown." TEX. CODE CRIM. PROC. ANN. art. 59.04 (k) (also requiring citation by publication, and compliance with Texas Rules of Civil Procedure 114, 115, and 116).

Even if certificate of title caused the initial failure to request issuance, the State's duty was continuous. The State amended its petition to include Mrs. Alcorn as a potential owner, interest holder, or other person with

---

[9] Fisher v. State, 803 S.W.2d 828, 830 (Tex. App.—Dallas 1991, writ ref'd) (*citing Knox,* 405 S.W.2d at 161).

[10] *Belleza-Gonzalez*, 57 S.W.3d at 12.

[11] *$4,464,2002*, Tex. App. LEXIS 6423, at *6 (citing *$ 6,453,* 63 S.W.3d at 536)). See also Windle v. Mary Kay, Inc., No. 05-02-00252-CV, 2003 Tex. App. LEXIS 5594, at *6-7 (Tex. App.—Dallas July 1, 2003, pet. denied) (mem. op.) (finding attorney's affidavit insufficient because merely providing excuses does not indicate "what efforts counsel made to effectuate service").

[12] Roberts v. Padre Island Brewing Co., 28 S.W.3d 618, 622 (Tex. App.—Corpus Christi 2000, pet. denied).

interest—but then still did not seek issuance and service on her. And, then, it refused to respond for failing to include and serve her previously.

Lastly, if Mrs. Alcorn was not in possession, and the State truly did not know who the owners were, the State was required to follow 59.04(k)'s procedure: file an affidavit of unknown owners, obtain alternate service, and request appointment of an attorney ad litem. None of this was done.

Because the State never sought issuance of service for Mrs. Alcorn—even after it noticed her interests—, it was not diligent as a matter of law. Because the State never took any affirmative act to effectuate service on Mrs. Alcorn, it was not diligent as a matter of law. Because it did not utilize all methods for locating owners, it did not exhaust all available remedies.

Again, the State chose when, where, how, and why to pursue this forfeiture, was responsible for abiding by the rules governing it, and had a continuous duty to fix and explain its failure(s) to follow the rules. Because the State failed to do these things, the trial court could not have found diligence as a matter of law.

## II. ISSUE TWO RESTATED:

Granting final summary judgment was inappropriate because issues, claims, and defenses are unresolved.

The State's summary judgment motion was wholly based on Mrs. Alcorn's inability to successfully assert the innocent owner defense of Article 59.02(c), Texas Code of Criminal Procedure. Because the State still had to prove the issues of probable cause and contraband against Mrs. Alcorn, and because it mentioned none of Mrs. Alcorn's other defenses, full and final summary judgment could not have been granted.

A court cannot grant summary judgment on more issues than those "expressly set out in the motion or in an answer or any other response." TEX. R. CIV. P. 166a(c). Courts will be reversed for granting summary judgment on claims not addressed in the motion or granting more relief than a party is entitled to. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). Even without objection, a court of appeals cannot "*read between the lines or infer* from the pleadings any grounds for granting the summary judgment other than those grounds expressly set forth before the trial court." *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013).

**1.** **The State's motion for summary judgment only challenges Mrs. Alcorn's use of the innocent owner defense under 59.02(c).**

The first page of the State's motion deals with procedural posture of the case. (I C.R. 35-36)  The second page contains the subsection, *Requests for Admissions*, and only discusses the State's "cause of action against Respondent, Sedderick Alcorn." (*Id.* at 36)  Mrs. Alcorn is never mentioned, and deemed admissions of Sedderick are inadmissible against her. [13]

Page three starts with subsection *B*, entitled *Forfeitures*, and gives full argument for *Summary Judgment Regarding Sedderick Alcorn*. (*Id.* at 37)

The next section concerns *Summary Judgment Regarding LaToya Alcorn*, where the State challenges that she lacks standing to raise 59.02(c)'s innocent owner defense; and that no-evidence supports her ownership interest or reasonable lack of knowledge under 59.02(c). (*Id.* at 38-43).

The next page lists evidence, and, essentially, has a boilerplate request for forfeiture. (*Id.* at 44) The last page gives the hearing date. (*Id.* at 45)

Thus, the judgment of forfeiture was improper because the State only challenged Mrs. Alcorn's ability "to raise the innocent owner defense" (*id.* at 40), and other issues, claims and defenses were not addressed.

---

[13] "The rule is firmly established that admissions directed to one defendant, whether answered, or admitted by reason of failure to answer, are not evidence against other defendants in the same case." Bryant v. Kimmons, 430 S.W.2d 73, 76 (Tex. Civ. App.— Austin [3rd Dist.] 1968, no writ). See TEX. R. CIV. P. 198.3 (stating deemed admission "is conclusively established *as to the party making the admission*").

## 2.     Mrs. Alcorn put everything in issue.

Within her verified answer (I C.R. 127-129), Mrs. Alcorn denied all State allegations, denied that all conditions precedent were met, and asserted affirmative defenses of statute of limitations, disproportional forfeiture, and innocent owner defenses under 59.02(c) and (h)(1)(C). Thus, the State had the burden to prove all of its allegations, and Mrs. Alcorn could defeat the State's claims by raising fact issues on each element of her defenses.

### a. *The State must conclusively prove that probable cause existed to seize, and that the property is contraband subject to forfeiture.*

The State must conclusively prove (1) existence of probable cause for seizure of the property, and (2) the property is forfeitable contraband. *State v. $90,235.00*, 390 S.W.3d 289, 293 (Tex. 2013).[14] Every appellate opinion supporting the State's summary judgment on the innocent owner defense issue says the State still must prove probable cause and contraband.[15] But, the State never moved for summary judgment on the issue of probable cause

---

[14] (citing $56,700 v. State, 730 S.W.2d 659, 661 (Tex. 1987), and Tex. Const. art. I, § 9))

[15] See Gray v. State, No. 03-99-00235-CV, 1999 Tex. App. LEXIS 8213, at *3-4 (Tex. App.—Austin [3rd Dist.] Nov. 4, 1999, no pet.) (mem. op., not designated for publication) (noting "State must prove … property seized is contraband . . . [and] show probable cause"); Mitchell v. State, 819 S.W.2d 659, 660 (Tex. App.—El Paso 1991, no writ) (noting "it was the state's burden to establish . . . a nexus between the property to be forfeited and the statutorily-defined criminal activity."); Gaston v. State, 641 S.W.2d 261, 263 (Tex. App.—Houston 1982, no writ) (State has "burden of showing the vehicle was subject to forfeiture."); Amrani-Khaldi v. State, 575 S.W.2d 667, 669-70 (Tex. Civ. App.—Corpus Christi 1978, no writ) (stating, when owner files "verified answer denying that the property is subject to forfeiture, 'the burden is on the state to prove [otherwise]").

or contraband, thus, the trial court erred by granting final summary judgment. (For more discussion on these issues, *see, infra*, at 31-40.)

### b. Mrs. Alcorn asserted the limitations defense.

The State never mentioned this defense (discussed above at 10-23).

### c. Mrs. Alcorn claimed the defense under Article 59.02(h)(1)(C).

Mrs. Alcorn asserted the elements of subsection 59.02(h)(1)(C). (I. C.R. 127-28). Subsection (h)(1)(C) acts as a separate defense for an innocent owner or interest holder who proves she "was not a party to the offense giving rise to the forfeiture and that the contraband … was used or intended to be used without [her] effective consent … in the commission of the offense giving rise to the forfeiture." *2003 Ford Pickup v. State*, No. 04-06-00036-CV, 2007 Tex. App. LEXIS 865, at *8 (Tex. App.—San Antonio Feb. 7, 2007, no pet.) (mem. op.) (explaining and applying 59.02(h)).

Subsection 59.04(h) was enacted in 2001, none of the State's authority addresses this subsection, and, on the issue of standing, the State only used authority pre-dating its enactment. (For State's authority, *see, supra*, at n.15)

Mrs. Alcorn did not consent to any use of the vehicles that might subject them to forfeiture. (I C.R. 127-129, 227) Mrs. Alcorn's lack of involvement in any offense giving rise to forfeiture is undisputed. Thus, she

at least raised fact issues on this defense. Regardless, the State's motion for summary judgment did not address this defense.

### d. Mrs. Alcorn claimed the defense of disproportional forfeiture under the Eighth Amendment.

The Excessive Fines Clause of the Eighth Amendment [16] prevents forfeiture if the result would be grossly disproportional to the gravity of the offense. *United States v. Bajakajian*, 524 U.S. 321, 324 (1998).

In *One Car, 1996 Dodge X-Cab Truck v. State*, forfeiture of a truck is disproportional. 122 S.W.3d 422, 423 (Tex. App.—Beaumont 2003, no pet.). Police arrest Sondra Carroll pursuant to an outstanding warrant for drug possession. *Id.* at 422. While inventorying the truck, police find two straws containing trace amounts of methamphetamines. *Id*. at 423. Sondra pleads guilty to state jail felony possession of a controlled substance, but receives a misdemeanor jail sentence of 90 days. *Id*.

The State petitions to forfeit the truck. *Id*. Sondra's husband, Ray, testifies that $14,000 of community funds were used to purchase the truck, and estimates its value at the time of the offense to be around $11,000. *Id*. Although title is in Sondra's name, Ray uses the truck, and keeps it in good condition. *Id.* Ray knows about Sondra's drug problem, but not about the

---

[16] U.S. Const. amend. VIII.

truck's use in buying drugs. *Id*. Even so, the trial court grants forfeiture.

Applying *Bajakajian*, *supra*, the appeals court reverses, finding forfeiture to be grossly disproportionate to the gravity of the offense committed. First, misdemeanor sentences are inconsistent with forfeiture, but the facts do not support forfeiture even if Sondra had received a felony sentence. *Id.* at 427. Police discover only a small amount of drugs. No evidence shows the truck's use in selling drugs. No evidence suggests the truck's use in any other offense except speeding. *Id*. at 427-28.

In Mrs. Alcorn's case, the State's evidence (assuming its truth and admissibility) showed only one bad act for each vehicle. (I C.R. 10-11) The State mentioned Sedderick being charged with delivery of a controlled substance in a drug free zone, but offered no evidence that that charge supports forfeiture in this case.

For instance, the two alleged acts occur 14 and 7 months before seizure; yet, nothing described when Sedderick was charged, or that any charge arose from acts alleged in the forfeiture petition. (*Id.*) No charging document was attached. No conviction resulted that we know of.

No quantity of drugs or purchase amount(s) were specified. Other than hearsay, no evidence of drugs was given. No large amounts of cash were found anywhere in or near the vehicles, property or home. No drugs

were found anywhere in or near the vehicles, property or home. No subsequent acts involving drugs were illustrated.

The State also seized two different sets of rims that were not alleged to be involved in, or acquired by, any illegal act. (I C.R. 226, 230-31) (I C.R. Supp. 106-09) Yet, the State provided no evidence of damages it incurred, or its method for calculating value.

Mrs. Alcorn was not involved in any wrongdoing, and has no knowledge of illegal acts committed by Sedderick. (I C.R. 227) She used both vehicles, invested her own money in the car, has no past convictions, and explained that the rims' prices were well over values given by the State. (*Id.* at 226) She also maintains employment, works extra shifts, and provided specific instances about Sedderick's past employment. (*Id.* at 226-27).

Thus, genuine issues of material fact exist as to whether the State has sought to forfeit more property than what it is entitled to, and whether the amount forfeited should be reduced based on the circumstances.

Regardless, the State never addressed this defense.

## III. ISSUE THREE RESTATED:

The trial court's decision to grant summary judgment in favor of the State is not supported by the evidence.

The trial court erroneously granted summary judgment because the State's evidence and pleadings are incompetent, insufficient, and defective; and because evidence creates genuine issues of material fact.

**1.    The trial court erred by granting summary judgment for the State because the evidence is insufficient and incompetent.**

Assuming the State sought to prove the issues of probable cause and contraband against Mrs. Alcorn, the State's evidence cannot support summary judgment as a matter of law because it is hearsay, inconsistent, unverifiable, and not based on personal knowledge.

Affidavits supporting summary judgment must set forth facts that are admissible in evidence, not hearsay, and based on personal knowledge and within the competence of the affiant. TEX. R. CIV. P. 166a(f). Evidence also cannot be conflicting, or contain statements raising a fact issue. TEX. R. CIV. P. 166a(c) ("free from contradiction"). [17]

---

[17] See Randall v. Dallas Power & Light Co., 752 S.W.2d 4, 5 (Tex. 1988) (conflict between affidavit and deposition); Dillard v. NCNB Tex. Nat'l Bank, 815 S.W.2d 365, 360-61 (Tex. App.—Austin [3rd Dist.] 1991, no writ) (affidavit's statements contradict),

An affidavit relying on facts contained only in a missing exhibit is substantively defective.[18] If those relied upon facts are supplied elsewhere in the summary judgment evidence, the defect is one of form.[19]

Finally, pleadings "are not evidence,"[20] and courts "refuse to regard pleadings, even if sworn, as summary judgment evidence."[21]

---

*disapproved on other grounds*, Amberboy v. Societe de Banque Privee, 831 S.W.2d 793 (Tex. 1992).

[18] Brown v. Brown, 145 S.W.3d 745, 752 (Tex. App.—Dallas 2004, pet. denied); Galindo v. Dean, 69 S.W.3d 623, 627 (Tex. App.—Eastland 2002, no pet.) (medical records); Natural Gas Clearinghouse v. Midgard Energy Co., 23 S.W.3d 372, 380 (Tex. App.—Amarillo 2000, pet. denied) (affidavit of damages expert referencing information contained on computer disk); Mincron SBC Corp. v. Worldcom, Inc., 994 S.W.2d 785, 795-96 (Tex. App.—Houston 1999, no pet.) (invoices for disputed damages); Gorrell v. Texas Utils. Elec. Co., 915 S.W.2d 55, 60 (Tex. App.—Fort Worth 1995, writ denied) (sworn or certified copies of exhibits); Ceballos v. El Paso Health Care Sys., 881 S.W.2d 439, 445 (Tex. App.—El Paso 1994, writ denied) (medical records supporting medical opinions); see also Sorrells v. Giberson, 780 S.W.2d 936, 938 (Tex. App.—Austin [3rd Dist.] 1989, writ denied) (note not attached to affidavit failing to prove elements of suit).

[19] Mathis v. Bocell, 982 S.W.2d 52, 60 (Tex. App.—Houston 1998, no pet.); Watts v. Hermann Hosp., 962 S.W.2d 102, 105 (Tex. App.—Houston 1997, no pet.); Sunsinger v. Perez, 16 S.W.3d 469, 500-01 (Tex. App.—Beaumont 2000, pet. denied) (medical records); Martin v. Durden, 965 S.W.2d 562, 565 (Tex. App.—Houston 1997, pet. denied); Noriega v. Mireles, 925 S.W.2d 261, 265 (Tex. App.—Corpus Christi 1996, writ denied).

[20] Hidalgo v. Sur. Sav. & Loan Ass'n, 462 S.W.2d 540, 543 (Tex. 1971)

[21] *Id.* at 545.

***a.*** ***Motion to strike affidavit of Deputy White because it is based on unverifiable hearsay, and on facts outside his personal knowledge.***

Mrs. Alcorn moved to strike, and specifically objected to, Deputy White's affidavit due to it being hearsay, inconsistent, unverifiable, and not based on personal knowledge. (I C.R. 161-64, 349, & Supp. 17-28, 134)

Initially, Deputy White's affidavit states:

> Your Affiant was informed that on more than one occasion illegal narcotics have been purchased from the owner of the vehicles while the subject was inside of the vehicles.

(I C.R. 10, 208). "Affiant was *informed*"—illustrates classic hearsay. The facts are declared from an out of court declarant who experienced them separately, at another point in time. [22] Thus, the facts are outside Deputy White's personal knowledge. This is just like *Audish v. Clajon Gas Co.*, where the same is said for statements like, "I was advised that," "I am informed that," and "I was told that." 731 S.W.2d 665, 671 (Tex. App.— Houston 1987, writ ref'd n.r.e.).

Neither the affiant nor the unknown-unverifiable-declarant-"subject" say when, where, or how many occasions. [23] And, the State argued on

---

[22] Caldarera v. State, 504 S.W.2d 914, 915 (Tex. Crim. App. 1974) (finding affidavit conclusory and insufficient under Fourth Amendment where officer stated that person provided facts officer believed true based on others' statements and experience).

[23] TEX. R. CIV. P. 166a(c) (proof must be clear, positive, direct, not contradictory, and readily controvertible)

summary judgment that the Alcorns were not owners; thus, to whom does *owner* refer? [24]

Next, the affidavit mainly discusses two instances that do not involve Deputy White—that "*were* documented on video." (I C.R. 208). Others make the alleged videos. Others make the alleged identifications. Others know the underlying facts and circumstances. Therefore, Deputy White's affidavit is improper for the same reasons already mentioned.[25]

Deputy White never says whether he actually watched the videos. Although the instances "*were* documented," they occur 14 and 7 months before the affidavit's creation—so are they *still* documented? If still existing, are the videos clear? If so, why was no arrest made based on the video(s)?

### b. *Motion to strike affidavit because it makes unsubstantiated legal and factual conclusions*

The State's evidence is legally and factually insufficient to support that the vehicles are proceeds, or acquired with proceeds, from illegal drug sales. Legal and factual conclusions, opinions, and subjective beliefs unsupported by evidence are substantive defects that require no objection.[26]

---

[24] *Id.*

[25] *Id.* (c), (f), and improper predicate.

[26] Hou-Tex, Inc. v. Landmark Graphics, 26 S.W.3d 103, 112 (Tex. App.—Houston 2000, no pet.) (legal conclusions); Rizkallah v. Conner, 952 S.W.2d 580, 586-88 (Tex. App.—

Deputy White's affidavit supporting seizure and forfeiture declares:

> Affiant believes, based on training and experience, that the above described vehicles were obtained through the sale of illegal narcotics

(I C.R. 209).

In *$567.00 v. State*, similar allegations are found factually insufficient to support forfeiture—after a full trial. 282 S.W.3d 244 (Tex. App.—Beaumont 2009, no pet.). In *$567.00*, the Beaumont Court first finds legally sufficient evidence to support the judgment because the evidence shows: defendant made parole in January of 2003 for a drug delivery charge; sold drugs to law enforcement at least three times within six or seven months from making parole; sold "twelve rocks of cocain" to law enforcement; was arrested based on a warrant for those drug sales; and the property was seized at the time of arrest. *$567.00*, 282 S.W.3d at 248. Moreover, investigation and undercover surveillance show that defendant had no source of income or employment other than selling drugs. Defendant also bought the vehicle with small cash bills, and then had the vehicle placed in someone else's name. *Id.*

Yet, all that evidence is still not factually sufficient. *Id.* at 248-50. The property seized at the time of the defendant's arrest is not found in proximity to drugs or drug paraphernalia. *Id.* at 249. Despite the defendant's

Houston 1997, no writ) (beliefs and conclusions); Harley-Davidson Motor Co. v. Young, 720 S.W.2d 211, 213 (Tex. App.—Houston 1986, no writ) (opinions and conclusions)

drug trafficking in the past, no evidence demonstrates him to have done so recently. *Id.* There is also no inordinately large sum of money involved.

And, although video surveillance exists, "there is no evidence of how long the surveillance was conducted, how extensive it was, or how close in time it was to either the arrest or the purchase of the vehicle." *Id.* "The record does not reflect how much time elapsed between the last observed drug trafficking and [defendant's] arrest." *Id.* Even though defendant could not explain why he had a joint account with another person, who provided him money, the State failed to elicit evidence that the arrangement involved drug trafficking. *Id.* at 250.

Finally, the opinion makes clear: the State cannot simply assume that property is proceeds, or is acquired with proceeds, of drug sales because a defendant sold drugs in the past. *Id.* Nor can it simply say: "because [defendant] is a drug dealer any property he acquires is contraband." *Id.*

In Mrs. Alcorn's case, the only competent evidence that even might potentially exist based on the State's affidavit is video evidence of two instances. Even with that video documentation, assuming it admissible on every point in contention, the State still only has two instances—one for each vehicle—of conduct constituting a commission of crime.

Again, if other drug transactions were so likely to reoccur, why did only one act per vehicle occur in over one year's time?

But, the vehicles were also owned ***before*** the alleged drug sales even took place. Nowhere does the affidavit provide competent proof of Sedderick's finances or how the vehicles are purchased or why it is believed Sedderick bought the vehicles with proceeds from sales of narcotics or why one single transaction would produce sufficient income to purchase a vehicle—along with all the accessories that were on the vehicle.

Further, the affiant cannot base his knowledge on facts outside his knowledge.[27] Deputy White's statement assumes—quite tenuously—that Sedderick purchased vehicles with drug sale money because Sedderick (allegedly) sold drugs on only two independent and distanced occasions.[28]

Next, Deputy White states:

> and to further commit the violations of the Manufacture/ Delivery of a Controlled Substance…

(I C.R. 209). Again, assuming the videos' admissibility, there is no hint that, at this point, the State will be able to produce competent evidence Sedderick committed more than one offense for each vehicle. If the State cannot

---

[27] See TEX. R. CIV. P. 166a(c), (f).

[28] Stoddard v. State, 475 S.W.2d 744, 747 (Tex. Crim. App. 1972) (finding conclusion of affiants insufficient because affidavit did not "indicate the underlying circumstances").

validly speculate that Sedderick delivered contraband more than once per vehicle in the span of time involved, it cannot jump to the conclusion that the vehicles would be used "to further commit the violations…" Evidence rules do not allow such *speculation*, or this type of reasoning—that "because he did it in the past, he would do it again." [29]

### c. The State's affidavit does not conclusively establish probable cause.

Without seeing the videos, Deputy White could not attest to their reliability, and without attaching them, could not prove their reliability to the court. Deputy White never gave information corroborating the reliability or trustworthiness of any informant. Instead, Deputy White is relying on the validity of videos based on information relayed by another. It is as if "[t]he present affidavit is based almost entirely on hearsay information supplied by a first-time confidential informant." *State v. Duarte*, 389 S.W.3d 349, 355 (Tex. Crim. App. 2012).

There is no "track record" provided for this (or these) informant(s); no statement against penal interest; no consistency with other tips; no predictive information. *Duarte*, 389 S.W.3d at 356. Is this informant a "criminal milieu" looking for quid pro quo, or average citizen Joe? *Id.* at 357.

---

[29] See TEX. R. CIV. P. 166a(f); TEX. R. EVID. 404.

The informant's purported first hand knowledge is still insufficient. This Court may ask the same questions asked by the Court of Criminal Appeals in *Duarte*, "How much cocaine did he possess? A couple of lines worth, laid out … and fully consumed? A kilo? Where did Mr. [Alcorn] have the cocaine? In the pocket of his jeans? Hidden in the [glove box]? Was it piled on the [console] being weighed and packaged for sale?" *Id.*

Under the Fourth Amendment[30]—a less stringent test[31] than summary judgment—an "unsupported assertion or belief of the officer does not satisfy the requirement of probable cause." [32] Warrant affidavits must be "sufficiently clear that the affiants spoke from personal knowledge, rather than mere belief, or from knowledge gained through hearsay…" [33]

The fact that another officer is mentioned does not corroborate the reliability of this affidavit—but detracts from it. If another officer is seeing, feeling, smelling, hearing, sensing, the things attested to, there should be more detail, not less. Officers are trained to spot the detail.

Knowledge of these details is essential because the connection between property to be forfeited and criminal activity must be "substantial."

---

[30] U.S. Const. amend. IV.

[31] *Duarte*, 389 S.W.3d at 354 ("nondemanding standard").

[32] Spinelli v. United States, 393 U.S. 410, 423 (1969) (White, J., concurring)

[33] *Stoddard*, 475 S.W.2d at 748.

*Gray v. State*, No. 03-99-00235-CV, 1999 Tex. App. LEXIS 8213, at *4 (Tex. App.—Austin [3rd Dist.] Nov. 4, 1999, no pet.) (mem. op., not designated for publication).

Because the affidavit describes acts over 14 and 7 months old, the information relied upon in the affidavit is also stale. *McKissick v. State*, 209 S.W.3d 205, 214 (Tex. App.—Houston 2006, pet. ref'd) (stating facts in affidavit must not have become stale when the magistrate issues warrant).

The facts described in the affidavit and the time of the warrant's issuance are not "closely related." *Sgro v. United States*, 287 U.S. 206, 210 (1932); *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (holding information stale after 6-week delay from one-time drug buy to issuance).

The length of time calls into question the memory of the declarants and the current availability of evidence for a "single, non-recurring crime." *Crider v. State*, 352 S.W.3d 704, 708 (Tex. Crim. App. 2011). One act per vehicle cannot maintain probable cause as an "on-going" crime. *Gonzales v. State*, 761 S.W.2d 809, 813 (Tex. App.—Austin [3rd Dist.] 1988, writ ref'd).

Therefore, the State's affidavit does not even satisfy the Fourth Amendment—or at least raises fact questions as to that issue.

***d.*** ***The State's pleadings, even when sworn, cannot support its own summary judgment.***

The State's pleadings were improperly used as evidence. "The law is well settled that pleadings do not constitute proper summary judgment proof even if they are sworn."[34] Therefore, the State improperly uses the affidavit from its pleadings to support summary judgment.

***e.*** ***Deemed Admissions of others are inadmissible against Mrs. Alcorn.***
Again, deemed admissions of Sedderick are inadmissible against Mrs. Alcorn. (*See* earlier discussion at p. 25 & n.13.)

---

[34] Feldman v. Mfrs. Hanover Mortg. Corp., 704 S.W.2d 422, 423-24 (Tex. App.—Houston 1985, writ ref'd n.r.e.) (citing *Hidalgo*, 462 S.W.2d at 540).

**2.**     **The State neither raised nor proved a claim that either set of rims constitutes contraband.**

The State never once alleged in its pleadings or its evidence that either set of rims on the vehicles was used in the commission of an act giving rise to forfeiture. Neither affidavit mentioned rims or other personalty. (I C.R. 216-221) The Schedule *A* listing the property seized for forfeiture only describes the vehicles. (*Id.* at 65) Schedule *A* describes the truck's value as $6,000, and the car's value as $3,000. (*Id.*) Mrs. Alcorn's evidence refutes the State's seizure and its estimated values. (*Id.* at 226) (*See, infra*, at 52-53)

As such, genuine issues of material fact exist to prevent summary judgment because, again, the State has the burden to allege and conclusively prove that the property seized and forfeited is contraband.

**3.**     **The State's no-evidence motions erroneously employ conflicting evidence, and genuine issues of material fact do exist.**

The State improperly used evidence to prove its no evidence points. It used certificate of title and Mrs. Alcorn's interrogatory answer to argue no evidence supported her ownership or interest in the vehicles. It used Mrs. Alcorn's answer to an objectionable production request to assert that no evidence supported her reasonable lack of knowledge that Sedderick committed the alleged violations.

Lastly, genuine issues of material fact exist as to both claims—many of which are created by the State's own evidence.

Evidence attached to a no-evidence motion for summary judgment "should not be considered unless it creates a fact question." *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004). If evidence is conflicting or raises a fact issue, it will not support a summary judgment.[35] And, "circumstantial evidence may be used to establish any material fact." [36]

As to ownership and interest, the State's affidavits state under oath that Sedderick Alcorn is owner of the vehicles, and that James Rackley and Gill Shamsher have had no claim "in the previous year to present." (I C.R. 10) It then argued the exact opposite in order to obtain summary judgment.

Yet, the State's affidavits, James Rackley's affidavit, and both default judgments are conclusive against the State on this point. The State even admits "certificate of title is not conclusive of ownership." (I C.R. 34)

Mrs. Alcorn's interrogatory answer used by the State said she has "both a community property and monetary interest in the vehicles at issue." (I C.R. 41) "It is presumed that property possessed by either spouse during

---

[35] *See* TEX. R. CIV. P. 166a(c), *supra*, at 31 & n.17.
[36] Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004).

marriage is community property" [37]—which the State must rebut "by clear and convincing evidence." [38] And, Mrs. Alcorn's monetary interest raises separate fact issues, especially since her affidavit states that she put money into the Buick—to which the State does not respond. (*Id.* at 226)

Thus, the trial court illogically found no evidence of Mrs. Alcorn's ownership and interest, especially after it found that she had standing, and "was entitled to the requisite rights provided any holder of interest under Chapter 59." (*Id.* at 349)

As to reasonable lack of knowledge, Mrs. Alcorn's response to the State's request for production was that she "was unaware of, and does not believe in, [the vehicles'] use in furtherance of crime." (*Id.* at 43)  The State admits this is an affirmative middle ground "in between" two (non-summary judgment) opinions used to justify its position. (*Id.*) [39] Being a middle ground means *some* evidence existed.

Mrs. Alcorn directly exclaims her disbelief in the State's allegations. (I C.R. 227) Mrs. Alcorn confirms that she did not consent to any illegal act,

---

[37] Beal Bank v. Gilbert, 417 S.W.3d 704, 709 (Tex. App.—Dallas 2013, no pet.) (citing TEX. FAM. CODE ANN. § 3.003(a); Pearson v. Fillingim, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam)).

[38] TEX. FAM. CODE ANN. § 3.003(b); *see* Harrell v. Hochderffer, 345 S.W.3d 652, 656, and 657-660 (Tex. App.—Austin [3rd Dist.] 2011, no pet.) (discussing community property presumption concerning personal injury awards claim on summary judgment).

[39] *Mitchell*, 819 S.W.2d at 661 & n.1 (testimony, exhibits, and findings of fact); $18,800 v. State, 961 S.W.2d 257, 261 (Tex. App.—Houston 1997, no writ) ("at trial").

no drugs were sold using her vehicles; no drugs were in her home; no drugs were sold around her home or using her home. (*Id.*)

Other fact questions are created by circumstantial evidence. Only one instance occurred for each vehicle. (*Id.* at 10) Only two instances occurred in over a year's time. (*Id.*) Mrs. Alcorn was not present or involved—which was in the State's interest to allege. Both instances occurred away from Mrs. Alcorn's home. (*Id.*) Mrs. Alcorn worked, took whatever job times/ schedules were available, and Mrs. Alcorn's mother-in-law baby-sat because she and Sedderick were at work. (*Id.* at 227) Therefore, Mrs. Alcorn was not around to know what was going on.

Moreover, no evidence suggests law enforcement ever notified Mrs. Alcorn that her husband was committing any crime, or that her vehicles were being used or intended to be used to commit crime. The covert investigations and undercover surveillance create some evidence about why Mrs. Alcorn did not perceive any police presence, and the clandestine nature of police operations makes her lack of perception reasonable. (*Id.* at 10-11)

Mrs. Alcorn also believes that Sedderick worked at a temp agency, his family's lawn business, and odd jobs. (*Id.* at 226-27) She also believed Sedderick made money by financing cars, trading property, and fixing things up and reselling them. (*Id.*) Sedderick always paid bills he was responsible

for, and always had reasonable explanations for where he got money. (*Id.* at 227) What Sedderick said is admissible due to its effect on the listener.[40]

Mrs. Alcorn's knowledge of her husband's trouble with drugs in the past does not make her lack of knowledge unreasonable.[41] Even if it might prove harmful on cross-examination, it certainly does not prevent formulation of a genuine issue of material fact. Whether Mrs. Alcorn is being truthful is an issue of credibility—for the fact finder to decide at a hearing. Whether her belief is reasonable is also a question of fact.

The trial court should not have decided the issue in favor of the State because it thought what Mrs. Alcorn said did "***not ring true***." (I. C.R. 348)

The trial court erroneously made this assumption because it was supposed to view the evidence in a light most favorable to the non-movant, Mrs. Alcorn.

---

[40] See Klein & Assocs. Political Rels. v. Port Arthur Indep. Sch. Dist., 92 S.W.3d 889, 894–895 (Tex. App.—Beaumont 2002, pet. denied) (in defamation action, affidavits stating what affiants were told admissible in summary judgment to show affiants' belief).

[41] *§ 567.00*, 282 S.W.3d at 249-50 (finding State's use of defendant's past drug trafficking insufficient to prove issue of contraband).

## IV. REMAINING ISSUES RESTATED:

Summary judgment should not have been granted to the State.

The trial court erred by granting the State's summary judgment because authorities applying the innocent owner defense are erroneous, and the overall proceedings were unfair.

### A. AUTHORITIES APPLYING INNOCENT OWNER DEFENSE ARE WRONG.

In *Amrani-Khaldi*, the Corpus Christi Court of Appeals refuses to acknowledge a spouse's ability to assert the innocent owner defense in order to protect community property from forfeiture. 575 S.W.2d 667, 668 (Tex. Civ. App.—Corpus Christi 1978, no writ). The *Amrani-Khaldi* Court's decision stems from language in § 5.61 [now §3.202], Texas Family Code, expressing that community property subject to a spouse's sole or joint management, control and disposition is subject to the liabilities incurred by him or her before or during marriage. 575 S.W.2d at 668.

> Based on this Family Code provision, the Court formulates that
>
> community property is not exempt from forfeiture where such property is used by a spouse in such a manner as to contravene [forfeiture laws], even though such property is so used by one spouse without the knowledge or consent of the other spouse.

*Id.* at 668-69. None of the few appellate cases referencing *Amrani-Khaldi's*

reasoning [42] fully analyze it, and others do so unnecessarily.[43]

Time has come for *Amrani-Khaldi* to be openly discussed, fully dissected, and subsequently overruled.

First, forfeiture suits are "in rem" and are not suits against persons— as the State almost always contends. (I C.R. 36, 38) Suits that are in rem are only suits against property. There is no personal liability. Thus, forfeiture suits are not against a spouse, so no "liabilities [are] incurred by the spouse before or during marriage." TEX. FAM. CODE ANN. §3.202 (c).

Second, § 3.202 does not *create* liabilities, but merely codifies preexisting marital property law in Texas.[44] Thus, although § 3.202 might allow one's estate to be obligated, it does not actually obligate forfeiture of a spouse's community estate. In fact, unless § 3.202 (c) permits liability, a spouse cannot unilaterally obligate community property. TEX. FAM. CODE ANN. §3.201(b). *Amrandi-Khaldi* correctly states the rule: "one spouse can obligate…"; yet, incorrectly applies it by assuming an obligation simply

---

[42] Gray, 1999 Tex. App. LEXIS 8213, at *5-7; Bochas v. State 951 S.W.2d 64 (Tex. App.—Corpus Christi 1997, no writ); Gaston, 641 S.W.2d at 264.

[43] The *Gray* claimant was a party to the offense, and not innocent. 1999 Tex. App. LEXIS 8213, at *5-6. *Bochas* references rule in a footnote, and permits appeal anyway. 951 S.W.2d at 67 n.2.

[44] *E.g., Anderson v. Royce*, 624 S.W.2d 621, 622–623 (Tex. App.—Houston 1981, writ ref'd n.r.e.) (holding 4-year statute of limitation (for written contracts) controlled against debtor's spouse, rather than two-year statute, which would have applied if spouse's liability had been created by TEX. FAM. CODE ANN. § 5.61 (recodified as § 3.202)).

because one is allowed.

Next, just because marital property law permits community debt, does not mean it requires or approves of community debt, or that other laws are incapable of adding protection. Even if §3.202 allows forfeiture, that does not prevent the forfeiture statute itself from providing extra protection—which it does via distinct innocent owner defenses. TEX. CODE CRIM. PROC. arts. 59.02(c)(1)-(2), (h). *Amrani-Khaldi* simply ignores this. It jumps from the premise that the Family Code permits obligation in some cases, to the conclusion that obligation must be required in all cases—despite explicit protections elsewhere saying otherwise.

This reasoning also violates and completely ignores Article I, § 21, of the Texas Constitution, which declares "***No conviction shall work corruption of blood, or forfeiture of estate…***" Yet, that is exactly what is happening. Mrs. Alcorn's entire community property and monetary contributions may be forfeited, along with all rights to defend her property against forfeiture, merely because the other spouse (allegedly) broke the law.

The *Bochas* Court nods to the rule "well established in equity that a person who in good faith makes improvements upon property owned by another is entitled to compensation therefor." 951 S.W.2d at 67 n.2 (quoting *Sharp v. Stacy*, 535 S.W.2d 345, 351 (Tex. 1976)).

Yet, the above cases encourage the State to lie in wait—say, *14 months*—after an offense is committed in order to let a spouse pay off the property's liens held by banks or merchants, or allow time for making improvements. Once paid off, the State will sweep in to take the property free and clear of any innocent owner defense possibly asserted by the lienholder, and or obtain a greater value due to the improvements.

The State obtains a windfall while the spouse faces a troika of penalties: once by paying for the lien or improvement, second by losing the property, and third by losing her equity—all for doing nothing wrong.

These few opinions set forth a philosophy stripping bare the words of Chief Justice Hecht's concurring opinion that express "the injustice of imputing one person's criminal acts to an innocent victim." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 674-75 (Tex. 2008). Those words powerfully demonstrate the role of public policy, which

> must be carefully 'deduced from its constitution, laws, and judicial decisions.' The requirement of deduction is critical; it circumscribes judicial authority. Courts are to derive public policy from existing law, not create it. And courts must also recognize that public policy may change over time [45]
>
> *Amrani-Khaldi*'s reasoning is formulated around public policy

---

[45] *Fairfield Ins. Co.*, 246 S.W.3d at 673.

that disregards specific constitutional protections, [46] statutory provisions, and fundamental equitable-legal doctrines. [47] As such, *Amrani-Khaldi*, its progeny, and problematic philosophy cannot support summary judgment against Mrs. Alcorn or anyone else.

## B. THE PROCEEDINGS WERE UNJUST AND UNFAIR.

If this Court affirms the trial court in this case, it is effectively removing any right of a spouse, and possibly other family members, from ever challenging the State's ability to seize and forfeit property.

The trial court found Ms. Alcorn to have standing, and to be "entitled to the requisite rights provided any holder of interest under Chapter 59." (I C.R. 347) But then it granted summary judgment for lack of standing. (*Id.* at 352-53) Even if no standing exists to raise an innocent owner defense, Mrs. Alcorn has general standing to protect her property by challenging the State's proof, and asserting other defenses, like limitations, because that is required by all principles of due process, as well as Article I, § 21, of the Texas Constitution.

The trial court then said Mrs. Alcorn did not establish a scintilla of evidence because her affidavit "does not ring true." (*Id.* at 348) Counsel will

---

[46] TEX. CONST. art. XVI, § 15 (Separate and Community Property.)

[47] See TEX. FAM. CODE ANN. §§3.406 ("equitable lien"), 7.001 ("just and right division").

not reiterate all the evidence, but this determination was not made with an eye most favorable to Mrs. Alcorn. Her evidence rose to levels upheld by the State's supporting authorities—especially considering none of its forfeiture cases even involve summary judgment. [48]

The trial court's flawed assumptions are emphasized by evidence obtained after summary judgment. Mrs. Alcorn did not lie about investing money into the Buick—she candidly estimated an amount between $1,000 and $2,000 (I C.R. 226) that was actually $2,000. (I C.R. Supp. 88)

Was she lying about the price of the vehicles not being reflected in the State's schedule *A*? Well, the $2,997 worth of improvements to the Buick from Eagle Automotive—after the alleged act—equals what the State gave for the Buick as a whole. (*Id.* at 90-91) The $4,000 of improvements made by John Krause at Rockdale Auto Specialties proves a value much greater than the State's estimate. (*Id.* at 356-57)

Mrs. Alcorn said rims were on the Buick when it was seized but have since disappeared (I C.R. 226), inventory forms show all four tires on both vehicles when they were seized (I C.R. 230-31), and new pictures show the

---

[48] *Amrani-Khaldi*, 575 S.W.2d at 668 ("Trial"); *Gaston*, 641 S.W.2d at 264 (hearing evidence); *Gray*, 1999 Tex. App. LEXIS 8213, at *3 ("bench trial"); *One Ford Mustang v. State*, 231 S.W.3d 445, 450 (Tex. App.—Waco 2007, no pet.) ("bench trial"); *Mitchell*, 819 S.W.2d at 661 & n.1 (testimony, exhibits, and findings of fact); $18,800 v. State, 961 S.W.2d 257, 261 (Tex. App.—Houston 1997, no writ) ("at trial").

Buick sitting in police impound with all four tires and rims missing. (I C.R. Supp. 106-09) The State remains silent.

The receipt from the Rim Shop in Austin, Texas shows the Dodge truck rims were not even purchased until February 4, 2014—*six months after* the act alleged by the State. (I C.R. 360)

The State and trial court knew about the hardships facing both Mrs. Alcorn and her attorney. (I C.R. Supp. 126-33) (I C.R. 173-80) Mrs. Alcorn was late in the game due the State's failure to timely serve her, was then bombarded with discovery, and immediately subjected to summary judgment proceedings without adequate time to investigate. (I C.R. Supp. 126-33) The State also did not disclose evidence—like the information given by James Rackley, statements of other witnesses/agents, method of valuation, and the disappearance of valuable property. (I C.R. 238-43)

The State's own playbook says it cannot "structure the forfeiture proceeding in a way that deprives a statutorily defined claimant of the right to present a claim." [49] Yet, the State was permitted to simply ignore service requirements, timing rules, discovery practices, and standards of proof while Appellant was forced to prove her case, and disprove the State's, in detail.

---

[49] TDCAA Guide, at p. 31 (citing TEX. PENAL CODE ANN. §39.03).

Even with all its inconsistent evidence and arguments, the State was given the benefit of the doubt; yet, Appellant was quickly disbelieved. (*Id.* at 348)

What are we to do? Merely lie down in submission to political maneuvers raising the battle cry over the war on drugs? Far too long we have listened to this delusive song if it means we no longer respect due process, liberty, fairness, property rights, the pursuit of happiness, and other equitable principles of American and Texan jurisprudence.

For even Patrick Henry warns, "We are apt to shut our eyes against a painful truth, and listen to the song of that siren till she transforms us into beasts… Suffer not yourselves to be betrayed with a kiss." [50] Therefore, Appellant only asks this Court to give fair consideration instead of simply taking the State's word for it, as the trial court did below.

## PRAYER

Mrs. Alcorn is praying this Honorable Court reverse and render judgment that the statute of limitations bars forfeiture. Alternatively, Mrs. Alcorn prays this Honorable Court reverse and remand on all issues.

Respectfully submitted

---

[50] Patrick Henry, *An Appeal to Arms*, Virginia Convention (March 23, 1775) *in* Charles Morris, *Famous Orators of the World & Their Famous Orations* 21 (John C. Winston ed., 1902).

_Benton Ross Watson_

Benton Ross Watson
120 E. 1st Street / Box 1000
Cameron, Texas 76520
Tel: 1 (254) 307-8181
Fax: 1 (254) 231-0212
ross@texastopdefense.com
State Bar No. 24077591
Attorney for Appellant LaToya Alcorn

## CERTIFICATE OF SERVICE

This is to certify that on February 23, 2015, a true and correct copy of the above and foregoing document was served on the Milam County District Attorney's Office, by electronic transmission at wwtorrey@milamcounty.net and dkeen@milamcounty.net, electronic transmission was reported as complete.

_Benton Ross Watson_

Benton Ross Watson

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because this brief contains **11,881** words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. This brief complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been produced on a computer in conventional typeface using Microsoft Word in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.

3. The electronic file is virus and malware free.

_Benton Ross Watson_____
(Signature of filing party)


_____Benton Ross Watson_____
(Printed name)


_____Sole Practitioner_____
(Firm)


___February 23, 2015_____
(Date)

## APPENDICES

Trial Court's Order Granting State's Motion for Summary Judgment..................A-1

Trial Court's Order Denying Appellant's Motion for New Trial...........................A-2

Texas Code of Criminal Procedure Article 59.02.......................................................B-1

Texas Code of Criminal Procedure Article 59.02.......................................................B-2

# APPENDIX A-1

CAUSE NO. CV 36,279

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 20TH JUDICIAL DISTRICT |
| | § | |
| 2004 DODGE RAM 1500 TXLP#CPL1988 | § | MILAM COUNTY, TEXAS |
| AND 2000 BUICK TXLP#CV1N817 | § | |

## ORDER GRANTING STATE'S MOTION FOR SUMMARY JUDGMENT

On the 28th day of ___August___, 2014, came on to be heard the above entitled and numbered Cause, wherein The State of Texas is Petitioner and Sedderick Alcorn and LaToya Alcorn are Respondent(s). The property made the subject of this suit is set forth in detail in the State's Notice of Seizure and Intended Forfeiture.

I.

Petitioner appeared by and through her attorney of record and announced ready for trial and Respondent, Sedderick Alcorn, failed to appear.

Respondent, LaToya Alcorn, appeared by and through her attorney of record, Ross Watson.

II.

Respondent, Sedderick Alcorn, was served with a copy of Petitioner's Motion for Summary Judgment and did not file contravening motion with affidavits and did not present evidence to counter Petitioner's Motion for Summary Judgment.

Respondent, LaToya Alcorn, was served with a copy of Petitioner's Motion for Summary Judgment and did file a contravening motion with affidavit and did present evidence to counter

1

IMAGED

Petitioner's Motion for Summary Judgment.

## III.

The Court, after reviewing the pleadings is of the opinion Petitioner's Motion for Summary Judgment produced evidence sufficient to show the property made the subject of this motion is subject to forfeiture under the provisions of Chapter 59 of the Texas Code of Criminal Procedure, and that Petitioner's Motion for Summary Judgment should be granted.

## IV.

IT IS HEREBY ORDERED that Petitioner's Motion for Summary Judgment is, in all things, GRANTED.

## V.

IT IS ORDERED that the 2004 DODGE RAM 1500 TXLP#CPL1988 and 2000 BUICK TXLP#CV1N817 are forfeited to the State of Texas, to be administered by the attorney representing the State of Texas, pursuant to the applicable local agreements with the Milam County Sheriff's Department, in a manner prescribed by Section 59.06, Texas Code of Criminal Procedure, and that upon payment of all lawful liens the Texas Department of Transportation, Motor Vehicle Division, is directed to issue good and sufficient title to such vehicle such that will perfect title in the Milam County Sheriff's Office and any subsequent purchaser from said agency. The Milam County Sheriff's Office will satisfy any outstanding lien(s), towing fees or impound/storage fees on this vehicle, if any.

## VI.

IT IS FURTHER ORDERED that any property which is held as evidence in any pending civil forfeiture or criminal case and ordered distributed in this judgment, shall not be distributed

until such criminal or civil forfeiture case is final and/or the evidence hold removed.

All costs of Court are taxed against Respondent, Sedderick Alcorn and LaToya Alcorn for which let execution issue if not timely paid.

SIGNED this 28ᵗʰ day of _____, 2014.

_____
JUDGE PRESIDING,
20TH DISTRICT COURT

FILED
At 11:15 o'clock A M
AUG 2 8 2014 mc
Cindy Fechner
CINDY FECHNER
DISTRICT CLERK, MILAM COUNTY, TEXAS

# APPENDIX A-2

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 20TH JUDICIAL DISTRICT |
| | § | |
| 2004 DODGE RAM 1500 TXLP#CPL1988 | § | MILAM COUNTY, TEXAS |
| AND 2000 BUICK TXLP#CV1N817 | § | |

## ORDER OVERRULING DEFENDANT'S MOTION FOR NEW TRIAL

On the ___17th___ day of ___October___, 2014, the Court considered the Defendant's Motion For New Trial, the response thereto, and enters the following findings:

IT IS ORDERED THAT Defendant's Motion for a New Trial is DENIED in the interest of justice.

SIGNED ON: ___10/17/___.

_____
JUDGE PRESIDING, 20TH DISTRICT COURT

FILED
At 10.05 o'clock A M
OCT. 17 2014  mc

Cindy Fechner
CINDY FECHNER
DISTRICT CLERK, MILAM COUNTY, TEXAS

3

138

# APPENDIX B-1

Lexis Advance®
Research

---

Document: Tex. Code Crim. Proc. art. 59.02

---

# Tex. Code Crim. Proc. art. 59.02

Copy Citation

This document is current through the 2013 3rd Called Session

**Texas Statutes and Codes** > **CODE OF CRIMINAL PROCEDURE** > **TITLE 1. CODE OF CRIMINAL PROCEDURE OF 1965** > **MISCELLANEOUS PROCEEDINGS** > **CHAPTER 59. FORFEITURE OF CONTRABAND**

## Art. 59.02. Forfeiture of Contraband

**(a)** Property that is contraband is subject to seizure and forfeiture under this chapter.

**(b)** Any property that is contraband other than property held as evidence in a criminal investigation or a pending criminal case, money, a negotiable instrument, or a security that is seized under this chapter may be replevied by the owner or interest holder of the property, on execution of a good and valid bond with sufficient surety in a sum equal to the appraised value of the property replevied. The bond may be approved as to form and substance by the court after the court gives notice of the bond to the authority holding the seized property. The bond must be conditioned:

**(1)** on return of the property to the custody of the state on the day of hearing of the forfeiture proceedings; and

**(2)** that the interest holder or owner of the property will abide by the decision that may be made in the cause.

**(c)** An owner or interest holder's interest in property may not be forfeited under this chapter if the owner or interest holder proves by a preponderance of the evidence that the owner or interest holder acquired and perfected the interest:

**(1)** before or during the act or omission giving rise to forfeiture or, if the property is real property, he acquired an ownership interest, security interest, or lien interest before a lis pendens notice was filed under Article 59.04(g) of this code and did not know or should not reasonably have known of the act or omission giving rise to the forfeiture or that it was likely to occur at or before the time of acquiring and perfecting the interest or, if the property is real property, at or before the time of acquiring the ownership interest, security interest, or lien interest; or

**(2)** after the act or omission giving rise to the forfeiture, but before the seizure of the property, and only if the owner or interest holder:

**(A)** was, at the time that the interest in the property was acquired, an owner or interest holder for value; and

**(B)** was without reasonable cause to believe that the property was contraband and did not purposefully avoid learning that the property was contraband.

**(d)** Notwithstanding any other law, if property is seized from the possession of an owner or interest holder who asserts an ownership interest, security interest, or lien interest in the property under applicable law, the owner or interest holder's rights remain in effect during the pendency of proceedings under this chapter as if possession of the property had remained with the owner or interest holder.

**(e)** On motion by any party or on the motion of the court, after notice in the manner provided by Article 59.04 of this code to all known owners and interest holders of property subject to forfeiture under this chapter, and after a hearing on the matter, the court may make appropriate orders to preserve and maintain the value of the property until a final disposition of the property is made under this chapter, including the sale of the property if that is the only method by which the value of the property may be preserved until final disposition.

**(f)** Any property that is contraband and has been seized by the Texas Department of Criminal Justice shall be forfeited to the department under the same rules and conditions as for other forfeitures.

**(g)** An individual, firm, corporation, or other entity insured under a policy of title insurance may not assert a claim or cause of action on or because of the policy if the claim or cause of action is based on forfeiture under this chapter and, at or before the time of acquiring the ownership of real property, security interest in real property, or lien interest against real property, the insured knew or reasonably should have known of the act or omission giving rise to the forfeiture or that the act or omission was likely to occur.

**(h)** (1) An owner or interest holder's interest in property may not be forfeited under this chapter if at the forfeiture hearing the owner or interest holder proves by a preponderance of the evidence that the owner or interest holder was not a party to the offense giving rise to the forfeiture and that the contraband:

**(A)** was stolen from the owner or interest holder before being used in the commission of the offense giving rise to the forfeiture;

**(B)** was purchased with:

**(i)** money stolen from the owner or interest holder; or

**(ii)** proceeds from the sale of property stolen from the owner or interest holder; or

**(C)** was used or intended to be used without the effective consent of the owner or interest holder in the commission of the offense giving rise to the forfeiture.

**(2)** An attorney representing the state who has a reasonable belief that property subject to forfeiture is described by Subdivision (1) and who has a reasonable belief as to the identity of the rightful owner or interest holder of the property shall notify the owner or interest holder as provided by Article 59.04.

**(3)** An attorney representing the state is not liable in an action for damages resulting from an act or omission in the performance of the duties imposed by Subdivision (2).

**(4)** The exclusive remedy for failure by the attorney representing the state to provide the notice required under Subdivision (2) is submission of that failure as a ground for new trial in a motion for new trial or bill of review.

**(i)** The forfeiture provisions of this chapter apply to contraband as defined by Article 59.01(2)

(B)(v) of this code only in a municipality with a population of 250,000 or more.

## History

Enacted by Acts 1989, 71st Leg., 1st C.S., ch. 12 (H.B. 65), § 1, effective October 18, 1989; am. Acts 1993, 73rd Leg., ch. 828 (S.B. 1285), § 2, effective September 1, 1993; am. Acts 2001, 77th Leg., ch. 438 (S.B. 626), § 2, effective September 1, 2001; am. Acts 2001, 77th Leg., ch. 929 (S.B. 563), § 1, effective September 1, 2001; am. Acts 2003, 78th Leg., ch. 1275 (H.B. 3506), § 2(9), effective September 1, 2003; am. Acts 2009, 81st Leg., ch. 87 (S.B. 1969), § 25.043, effective September 1, 2009.

▶ Annotations

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

**Content Type:**

**Terms:**

**Narrow by:** -None-

**Date and Time:** Feb 23, 2015   04:56:42 a.m. EST

LexisNexis    About LexisNexis®    Privacy Policy    Terms & Conditions    Copyright © 2015 LexisNexis. All rights reserved.

# APPENDIX B-2

Lexis Advance®
Research

Document: Tex. Code Crim. Proc. art. 59.04

# Tex. Code Crim. Proc. art. 59.04

Copy Citation

This document is current through the 2013 3rd Called Session

**Texas Statutes and Codes** > **CODE OF CRIMINAL PROCEDURE** > **TITLE 1. CODE OF CRIMINAL PROCEDURE OF 1965** > **MISCELLANEOUS PROCEEDINGS** > **CHAPTER 59. FORFEITURE OF CONTRABAND**

## Art. 59.04. Notification of Forfeiture Proceeding

**(a)** If a peace officer seizes property under this chapter, the attorney representing the state shall commence proceedings under this section not later than the 30th day after the date of the seizure.

**(b)** A forfeiture proceeding commences under this chapter when the attorney representing the state files a notice of the seizure and intended forfeiture in the name of the state with the clerk of the district court in the county in which the seizure is made. The attorney representing the state must attach to the notice the peace officer's sworn statement under Article 59.03 of this code or, if the property has been seized under Article 59.12(b), the statement of the terms and amount of the depository account or inventory of assets provided by the regulated financial institution to the peace officer executing the warrant in the manner described by Article 59.12(b). Except as provided by Subsection (c) of this article, the attorney representing the state shall cause certified copies of the notice to be served on the following persons in the same manner as provided for the service of process by citation in civil cases:

**(1)** the owner of the property; and

**(2)** any interest holder in the property.

**(c)** If the property is a motor vehicle, and if there is reasonable cause to believe that the vehicle has been registered under the laws of this state, the attorney representing the state shall ask the Texas Department of Motor Vehicles to identify from its records the record owner of the vehicle and any interest holder. If the addresses of the owner and interest holder are not otherwise known, the attorney representing the state shall request citation be served on such persons at the address listed with the Texas Department of Motor Vehicles. If the citation issued to such address is returned unserved, the attorney representing the state shall cause a copy of the notice of the seizure and intended forfeiture to be posted at the courthouse door, to remain there for a period of not less than 30 days. If the owner or interest holder does not answer or appear after the notice has been so posted, the court shall enter a judgment by default as to the owner or interest holder, provided that the attorney representing the state files a written motion supported by affidavit setting forth the attempted service. An owner or interest holder whose interest is forfeited in this manner shall not be liable for court costs. If the person in possession of the vehicle at the time of the seizure is not the owner or the interest holder of the vehicle, notification shall be provided to the possessor in the same manner specified for notification to an owner or interest holder.

**(d)** If the property is a motor vehicle and is not registered in this state, the attorney representing the state shall attempt to ascertain the name and address of the person in whose name the vehicle is licensed in another state. If the vehicle is licensed in a state that has a certificate of title law, the attorney representing the state shall request the appropriate agency of that state to identify the record owner of the vehicle and any interest holder.

**(e)** If a financing statement is required by law to be filed to perfect a security interest affecting the property, and if there is reasonable cause to believe that a financing statement has been filed, the attorney representing the state who commences the proceedings shall ask the appropriate official designated by Chapter 9, Business & Commerce Code, to identify the record owner of the property and the person who is an interest holder.

**(f)** If the property is an aircraft or a part of an aircraft, and if there is reasonable cause to believe that a perfected security instrument affects the property, the attorney representing the state shall request an administrator of the Federal Aviation Administration to identify from the records of

that agency the record owner of the property and the holder of the perfected security instrument. The attorney representing the state shall also notify the Department of Public Safety in writing of the fact that an aircraft has been seized and shall provide the department with a description of the aircraft.

**(g)** If the property is real property, the attorney representing the state, not later than the third day after the date proceedings are commenced, shall file a lis pendens notice describing the property with the county clerk of each county in which the property is located.

**(h)** For all other property subject to forfeiture, if there is reasonable cause to believe that a perfected security instrument affects the property, the attorney representing the state shall make a good faith inquiry to identify the holder of the perfected security instrument.

**(i)** Except as provided by Section (c) of this article, the attorney representing the state who commences the proceedings shall cause the owner and any interest holder to be named as a party and to be served with citation as provided by the Texas Rules of Civil Procedure.

**(j)** A person who was in possession of the property at the time it was seized shall be made a party to the proceeding.

**(k)** If no person was in possession of the property at the time it was seized, and if the owner of the property is unknown, the attorney representing the state shall file with the clerk of the court in which the proceedings are pending an affidavit stating that no person was in possession of the property at the time it was seized and that the owner of the property is unknown. The clerk of the court shall issue a citation for service by publication addressed to "The Unknown Owner of ___," filling in the blank space with a reasonably detailed description of the property subject to forfeiture. The citation must contain the other requisites prescribed by and be served as provided by Rules 114, 115, and 116, Texas Rules of Civil Procedure.

**(*l*)** Proceedings commenced under this chapter may not proceed to hearing unless the judge who is to conduct the hearing is satisfied that this article has been complied with and that the attorney representing the state will introduce into evidence at the hearing any answer received from an inquiry required by Subsections (c)--(h) of this article.

## History

Enacted by Acts 1989, 71st Leg., 1st C.S., ch. 12 (H.B. 65), § 1, effective October 18, 1989; am. Acts 1991, 72nd Leg., ch. 14 (S.B. 404), § 282, effective September 1, 1991; am. Acts 1995, 74th Leg., ch. 165 (S.B. 971), § 22(25), effective September 1, 1995; am. Acts 1995, 74th Leg., ch. 533 (S.B. 1217), § 1, effective September 1, 1995; am. Acts 2001, 77th Leg., ch. 438 (S.B. 626), § 4, effective September 1, 2001; am. Acts 2009, 81st Leg., ch. 933 (H.B. 3097), § 3B.02, effective September 1, 2009.

▶ Annotations

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

**Content Type:**

**Terms:**

**Narrow by:** -None-

**Date and Time:** Feb 23, 2015   04:57:23 a.m. EST

